UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION<br>125 Broad Street<br>New York, NY 10004,<br><br>and<br><br>AMERICAN CIVIL LIBERTIES UNION<br>    FOUNDATION<br>125 Broad Street<br>New York, NY 10004,<br><br>and<br><br>THE NATIONAL SECURITY ARCHIVE<br>FUND, Inc.<br>The George Washington University<br>Gelman Library, Suite 701<br>2130 H Street, N.W.<br>Washington, D.C.  20037<br><br>           Plaintiffs,<br><br>   v.<br><br>UNITED STATES DEPARTMENT OF<br>    JUSTICE<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-0001<br><br>           Defendant. | Civil Action No. _____ |

**COMPLAINT FOR INJUNCTIVE RELIEF**

**Preliminary Statement**

      1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief, seeking the immediate processing and release of agency records requested by plaintiffs from defendant Department of Justice ("DOJ").

2.	In December 2005, plaintiffs American Civil Liberties Union and American Civil Liberties Union Foundation (collectively, "the ACLU") and the National Security Archive Fund, Inc. (the "Archive") filed FOIA requests seeking the release of records related to the NSA's secret surveillance program to intercept, without prior judicial authorization, the telephone and Internet communications of people inside the United States ("the Program").

**Jurisdiction and Venue**

3.	This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

**Parties**

4.	The ACLU is a national organization that works to protect civil rights and civil liberties. The American Civil Liberties Union Foundation is a 501(c)(3) organization that provides free legal representation and educates the public about civil rights and civil liberties issues. The American Civil Liberties Union is a separate non-profit, non-partisan, 501(c)(4) membership organization engaged in public education and analysis of pending and proposed legislation. As a leading defender of freedom, equality, privacy, and due process rights in the United States, the ACLU has provided direct representation to individuals and organizations with a well-founded belief that their communications are being intercepted by the NSA under the Program.

5.	Plaintiff National Security Archive Fund, Inc. ("the Archive") is an independent non-governmental research institute and library located at The George Washington University in Washington, D.C. The Archive collects and publishes declassified documents acquired through the Freedom of Information Act ("FOIA"). The Archive is the world's largest nongovernmental

2

library of declassified documents, has published more than 500,000 pages of declassified documents in various formats, and has become the leading non-profit user of FOIA. The Archive has made extensive requests for records regarding the NSA's surveillance activities.

6. Defendant United States Department of Justice ("DOJ") is a Department of the Executive Branch of the United States Government. The DOJ is an agency within the meaning of 5 U.S.C. § 552(f)(1).

### The NSA's Secret Domestic Spying Program

7. According to published news reports, in the fall of 2001 the NSA launched a secret surveillance program ("the Program") to intercept, without prior judicial authorization, the telephone and Internet communications of people inside the United States. James Risen and Eric Lichtblau, *Bush Lets U.S. Spy on Callers Without Courts*, New York Times, Dec. 16, 2005, at A1, A16. President Bush ratified the Program in 2002. Since then, the President has reauthorized the Program more than 30 times.

8. Under the Program, the NSA intercepts vast quantities of the international telephone and Internet communications (hereinafter collectively "communications") of people inside the United States, including citizens and lawful permanent residents.

9. The legality and propriety of the NSA's warrantless spying is the subject of sustained, intense public concern. It took less than a day for Arlen Specter, the Republican chairman of the Senate Judiciary Committee, to pledge that the Senate would hold hearings to investigate the NSA's warrantless surveillance. Jennifer Loven, *Report of NSA Spying Prompts Call for Probe*, San Francisco Chronicle, Dec. 16, 2005. At the time the FOIA request at issue here was filed, the Program had already stimulated multiple news stories around the country. *See, e.g.,* James Risen and Eric Lichtblau, *Bush Lets U.S. Spy on Callers Without Courts*, New York Times, Dec. 16, 2005, at A1; Maura Reynolds and Greg Miller, *Congress Wants Answers*

*About Spying on U.S. Citizens*, Pittsburgh Post-Gazette, Dec. 16, 2005; Steven Thomma, *Spying Could Create Backlash on Congress; Public Reaction Hinges on Identity of Targets*, San Jose Mercury News, Dec. 16, 2005; Christine Hauser, *Bush Declines to Discuss Report on Eavesdropping*, New York Times, Dec. 16, 2005; Katherine Shrader, *Lawmakers Say Reported Spy Program Shocking, Call For Investigations*, San Diego Union Tribune, Dec. 16, 2005; Caren Bohan and Thomas Ferraro, *Bush Defends Eavesdropping and Patriot Act*, ABC News, Dec. 17, 2005; Dan Eggan and Charles Lane, *On Hill, Anger and Calls for Hearing Greet News of Stateside Surveillance*, Washington Post, Dec. 17, 2005, at A1; Jennifer Loven, *Bush Defends Secret Spying in U.S.*, San Francisco Chronicle, Dec. 17, 2005; Barton Gellman and Dafna Linzer, *Pushing the Limits of Wartime Powers*, Washington Post, Dec. 18, 2005, at A1; John Diamond, *NSA's Surveillance of Citizens Echoes 1970s Controversy*, USA Today, Dec. 18, 2005; James Kuhnhenn, *Bush Defends Spying in U.S.*, San Jose Mercury News, Dec. 18, 2005; Fred Barbash and Peter Baker, *Gonzales Defends Eavesdropping Program*, Washington Post, Dec. 19, 2005; Todd J. Gillman, *Bush Assails Disclosure of Domestic Spying Program*, San Jose Mercury News, Dec. 19, 2005; David Stout, *Bush Says U.S. Spy Program is Legal and Essential*, New York Times, Dec. 19, 2005; James Gerstenzang, *Bush Vows to Continue Domestic Surveillance*, L.A. Times, Dec. 19, 2005; Terence Hunt, *Bush Says NSA Surveillance Necessary, Legal*, Washington Post, Dec. 19, 2005; George E. Condon, *Bush Says Spying Is Needed To Guard US*, San Diego Union Tribune, Dec. 20, 2005; Jeff Zeleny, *No 'Unchecked Power' In Domestic Spy Furor*, Chicago Tribune, Dec. 20, 2005; Michael Kranish, *Bush Calls Leak of Spy Program Shameful*, Boston Globe, Dec. 20, 2005; Craig Gordon, *For Bush, 9/11 Justifies Eavesdropping*, Newsday, Dec. 20, 2005.

10. Since then, concern by Congress, the media and the public has continued unabated. On January 31, 2006, President Bush devoted a portion of his State of the Union

4

Address to defending the National Security Agency spying program. On January 23, 2006, General Michael Hayden, former director of the NSA, spoke at the National Press Club to give an impassioned speech advocating for the NSA spying program. On February 6, 2006, the Senate Judiciary Committee began hearings on the NSA spying program. Attorney General Alberto Gonzales himself defended the lawfulness and propriety of the NSA's actions. *See also* Scott Shane, *At Security Agency, News of Surveillance Program Gives Reassurances a Hollow Ring*, New York Times, Dec. 22, 2005, at A22; Robert Gehrke, *Secretive court in the dark on spying; Utah judge says answers from Bush are crucial; Judge Benson wants details on spying*, Salt Lake Tribune, Dec. 23, 2005, at A1; Stewart M. Powell, *Secret Court Modified Wiretap Requests, Seattle Post-Intelligencer*, Dec. 24, 2005, at A9; Philip Dine, *Is eavesdropping a symptom of illness or signal of strength?*, St. Louis Post-Dispatch, Dec. 25, 2005, at B1; Editorial, *Defense of wiretaps still falling short; Privacy should get benefit of the doubt*, Rocky Mountain News, Jan. 4, 2006, at 32A; Jim VandeHei and Dan Eggen, *Cheney Cites Justifications For Domestic Eavesdropping; Secret Monitoring May Have Averted 9/11, He Says*, Washington Post, Jan. 5, 2006, at A02; Bob Egelko, *SPY POWERS; Can the president eavesdrop on private citizens without a judge's ok? The high court said 'no' in 1972 Wiretaps: Ruling requires warrants for spying at home*, San Francisco Chronicle, Jan. 8, 2006, at A1; Eric Lichtblau, *Judges and Justice Dept. Meet Over Eavesdropping Program*, New York Times, Jan. 10, 2006, at A14; Julie Hirschfeld Davis, *In reversal, Bush backs hearings on wiretaps*, Baltimore Sun, Jan. 12, 2006, at 6a; Editorial, *End the end run; President wrong to bypass courts in ordering domestic wiretaps*, Columbus Dispatch, Jan. 14, 2006, at 12A; Maura Reynolds, *The Nation; Specter Remains Doubtful of Spy Program's Legality; He says Bush was not given a 'blank check' when Congress OKd the use of force after 9/11*, L.A. Times, Jan. 16, 2006, at A15; Frank James, *Gore accuses president of breaking the law*, Chicago Tribune, Jan. 17, 2006; *Bob*

5

*Deans, Wiretap battle lines harden,* Atlanta Journal-Constitution, Jan. 26, 2006, *at 3A;* Jake Thompson, *Scrutiny on surveillance issue backed*, Omaha World-Herald, Jan. 27, 2006, at 01A; Jim Puzzanghera, *Experts challenge need for warrantless spying*, Mercury News, Jan. 28, 2006; Carol D. Leonnig, *Gonzales Is Challenged on Wiretaps*, Washington Post, Jan. 31, 2006, at A07.

### Plaintiffs' FOIA requests

11. On December 20, 2005, plaintiff ACLU submitted a FOIA request to defendant DOJ seeking records relating to the Program. The ACLU sent its request to the FOIA/PA Mail Referral Unit. The next day, the ACLU forwarded its request to the Office of Information and Privacy. The ACLU requested any presidential order(s) authorizing the NSA to engage in warrantless electronic surveillance. It also requested records relating to the policies, practices and procedures of the NSA for selecting individuals to subject to warrantless domestic surveillance; for gathering, maintaining, storing, and sharing information generated through such surveillance; for using gathered information as the basis for FISA requests; and for consulting with, or obtaining approval from, defendant DOJ before engaging in warrantless electronic surveillance. The ACLU requested any DOJ "legal reviews of the program and its legal rationale," any DOJ audit of the program, and any other records on the constitutionality, legality, and/or propriety of the NSA's warrantless domestic spying.

12. The ACLU requested expedited processing of its request. The ACLU had grounds for expedited processing because the information sought relates to "a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence," 28 C.F.R. § 16.5(d)(1)(iv), and because there is "[a]n urgency to inform the public about an actual or alleged federal government activity" by organizations "primarily engaged in disseminating information," 28 CFR § 16.5(d)(1)(ii).

13. The ACLU requested a limitation of processing fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) ("fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by . . . a representative of the news media . . ."). The ACLU additionally requested a waiver of all costs pursuant to 5 U.S.C. §552(a)(4)(A)(iii) ("Documents shall be furnished without any charge . . . if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester.").

14. On December 22, 2005, the Archive filed a FOIA request seeking information about the Program. It filed a FOIA request with the Office of Information and Privacy and the Office of Legal Counsel seeking copies of "[a]ll memoranda, legal opinions, directives or instructions from the Attorney General, Assistant Attorney General, or the Office of Legal Counsel (OLC), issued between September 11, 2001, and December 21, 2005, regarding the government's legal authority for surveillance activity, wiretapping, eavesdropping, and other signals intelligence operations directed at communications to or from U.S. citizens. Please include all documents discussing the President's surveillance authority under the September 2001 congressional use of force resolution as well as the President's independent ability to authorize signals intelligence activities."

15. On January 9, 2006, the Archive added an addendum to its December 22, 2005 FOIA request seeking expedited processing. Like the ACLU, the Archive explained that "there exists a compelling need to review materials because the information is sought by a person primarily engaged in disseminating information and is urgently needed to inform the public concerning actual or alleged Federal Government activity" (internal quotation marks and brackets omitted).

16. Like the ACLU, the Archive requested a fee waiver. The Archive explained that it "qualifies for a waiver of search and review fees as a representative of the news media. This request is made as part of a scholarly and news research project and not for commercial use." The Archive requested notification before incurring any copying costs over $100.

**Defendants' Failure to
Disclose the Records Sought**

17. The ACLU received a letter dated January 6, 2006, from the DOJ's Office of Information and Privacy. The letter responded to the ACLU's request on behalf of the Offices of the Attorney General and Deputy Attorney General. The letter stated that the Director of Public Affairs decided that the ACLU's request for expedited processing should be granted. It stated that the request "is being processed at this time," but provided no information regarding when processing will be completed. The DOJ has not considered plaintiffs' request for a waiver of processing fees. The DOJ Office of Information and Privacy stated that it would do so at some unspecified point in the future.

18. On January 20, 2006, the Archive received a response to its FOIA request of December 22, 2005. The response was from the Office of Information and Privacy and was made on behalf of the Office of the Attorney General. The DOJ granted the Archive's request for expedited processing. The letter further stated that the Archives request "has been assigned to a FOIA specialist in this Office and records searches are being initiated." The letter provided no information regarding the time frame for processing. The letter stated that the Archive had agreed to pay fees up to $100, but did not address the Archive's request for a waiver of fees. The Archives has received no response from the Office of Legal Counsel.

19. To date, defendants have not disclosed any records in response to plaintiffs' FOIA requests nor stated which records, if any, they intend to disclose.

20. Defendants are improperly withholding the records sought by plaintiffs' FOIA requests.

21. Plaintiffs have exhausted the applicable administrative remedies.

## CAUSES OF ACTION

First Cause of Action:
Violation of the FOIA for Failure to Make Promptly
Available the Records Sought by Plaintiffs' Request

22. Defendants' failure to make promptly available the records sought by plaintiffs' request violates the FOIA, 5 U.S.C. § 552(a)(3)(A), and the corresponding agency regulations.

Second Cause of Action:
Violation of the FOIA for Failure Timely to
Respond to Plaintiffs' Request

23. Defendants' failure timely to respond to plaintiffs' request violates the FOIA, 5 U.S.C. § 552(a)(6)(A), and the corresponding agency regulations.

## Requested Relief

WHEREFORE, Plaintiffs pray that this Court:

A. Order defendant immediately to process the requested records in their entirety;

B. Order defendant, upon completion of such expedited processing, to disclose the requested records in their entirety and make copies available to plaintiffs;

C. Enjoin defendants from charging plaintiffs fees for the processing of their request;

D. Award plaintiffs their costs and reasonable attorneys' fees incurred in this action; and

E. Grant such other relief as the Court may deem just and proper.

        Respectfully submitted,

/s/ _____
ARTHUR B. SPITZER
D.C. Bar No. 235960
American Civil Liberties Union
  of the National Capital Area
1400 20th Street, NW, Suite 119
Washington, D.C. 20036
Phone: (202) 457-0800
Fax: (202) 452-1868

ANN BEESON
CATHERINE CRUMP
American Civil Liberties Union Foundation
125 Broad Street
New York, NY 10004
Phone: (212) 549-2500
Fax: (202) 452-1868

MEREDITH FUCHS
The National Security Archive Fund, Inc.
The George Washington University
Gelman Library, Suite 701
2130 H Street, N.W.
Washington, D.C. 20037

Counsel for Plaintiffs

February 7, 2006