UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION<br>125 Broad Street<br>New York, NY 10004,<br><br>    and<br><br>AMERICAN CIVIL LIBERTIES UNION<br>    FOUNDATION<br>125 Broad Street<br>New York, NY 10004,<br><br>    and<br><br>THE NATIONAL SECURITY ARCHIVE<br>FUND, INC.<br>The George Washington University<br>Gelman Library, Suite 701<br>2130 H Street, N.W.<br>Washington, D.C. 20037<br><br>              Plaintiffs,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF<br>    JUSTICE<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-0001<br><br>              Defendant. | Civil Action No. _____ |

## MOTION TO CONSOLIDATE

Pursuant to Federal Rule of Civil Procedure 42, plaintiffs American Civil Liberties

Union, American Civil Liberties Union Foundation (collectively, "the ACLU"), and the National

Security Archive Fund, Inc. (the "Archive") move to consolidate this case with *Electronic*

*Privacy Information Center v. Department of Justice*, Civil Action No. 06-0096 (HHK), which

involves a virtually identical Freedom of Information Act ("FOIA") request served on the same defendant.[1]

## BACKGROUND

In December 2005, EPIC, the ACLU and the Archive filed essentially identical FOIA requests seeking disclosure of information from DOJ regarding the National Security Agency's secret surveillance program to intercept, without prior judicial authorization, the telephone and Internet communications of people inside the United States.[2]  The DOJ's response to the three FOIA requests was virtually identical.  In each case, the DOJ granted expedited processing, made no decision on whether to waive fees, and failed to process the request within even the standard, 20-day timeframe for responding to an unexpedited request.

On January 19, 2006, EPIC filed a Complaint for injunctive relief for expedited processing and release of agency records requested from several components of DOJ.  EPIC simultaneously filed a motion for a preliminary injunction, seeking to enjoin DOJ's unlawful attempts to impede EPIC's access to agency records, and requesting an order requiring DOJ to expedite the processing of its request and to complete processing within twenty days.  Defendant DOJ filed its response on January 26, 2006.  EPIC filed a reply brief on January 30, 2006.  Judge Kennedy has scheduled a hearing on the preliminary injunction motion for February 10, 2006.

## ARGUMENT

Fed. R. Civ. P. 42 states that "[w]hen actions involving a common question of law or fact are pending before the court . . . it may order all the actions consolidated."  This action and *EPIC v. DOJ* involve a myriad of common legal issues and factual questions.  EPIC, the ACLU and the Archive all filed FOIA requests with DOJ seeking information regarding the same subject, the NSA's warrantless interception of communications of people inside the United States.  The DOJ

---

[1] As required by Local Rule 40.5(b)(2), plaintiffs filed a notification of related cases together with their Complaint.
[2] The ACLU's FOIA request is attached as Exhibit 1.  The Archive's FOIA request is attached as Exhibit 2.

granted all three organizations expedited processing.  As of the date of filing, and even though the deadline for responding to an unexpedited FOIA request has passed, DOJ has failed to complete processing of any of the organizations' FOIA requests or informed any of the organizations of a date by which it anticipates completing processing.

Consolidating these cases will conserve the resources of all of the parties to this litigation as well as the resources of this Court.  Because EPIC's motion for a preliminary injunction has not yet been heard, these cases are at the same stage.  If plaintiffs' motion to consolidate is granted, plaintiffs ACLU and the Archive would join EPIC's pending motion for a preliminary injunction, which is scheduled for a hearing on February 10, 2006.   Counsel for EPIC, David L. Sobel, would argue at the hearing on behalf of the consolidated plaintiffs.  If the motion to consolidate is not granted, plaintiffs ACLU and the Archive would file a motion for a preliminary injunction in this case that is identical to the pending motion in EPIC's case, and the government would have to respond, and the Court would need to make a separate ruling on that motion.  Plaintiffs move to consolidate to avoid unnecessary duplication.

## CONCLUSION

For the foregoing reasons, plaintiffs ACLU and the Archive respectfully request that this Court consolidate this case with *Electronic Privacy Information Center v. Department of Justice*, Civil Action No. 06-0096 (HHK).

Counsel for plaintiffs have consulted with counsel for the Electronic Privacy Information Center ("EPIC"), plaintiff in Action No. 06-0096, and counsel consents to consolidation of the actions, provided that the consolidation does not delay the pending proceedings in EPIC's action. Counsel for plaintiffs have consulted for counsel for the Department of Justice in Action No. 06-0096, and counsel for DOJ has advised us that they will have an answer shortly on whether they

will consent to this motion.  Counsel for plaintiffs will update the Court as soon as they hear from defendants.

Respectfully submitted,

_____

ARTHUR B. SPITZER
D.C. Bar No. 235960
American Civil Liberties Union
  of the National Capital Area
1400 20th Street, NW, Suite 119
Washington, D.C. 20036
Phone:  (202) 457-0800
Fax: (202) 452-1868

ANN BEESON
CATHERINE CRUMP
American Civil Liberties Union Foundation
125 Broad Street
New York, NY 10004
Phone:  (212) 549-2500
Fax: (202) 452-1868

MEREDITH FUCHS
The National Security Archive Fund, Inc.
The George Washington University
Gelman Library, Suite 701
2130 H Street, N.W.
Washington, D.C. 20037

Counsel for Plaintiffs

February 7, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2006, one copy of the foregoing Motion to Consolidate was served on the United States Attorney, 555 4th Street, NW, Washington, DC 20001.

_____

ARTHUR B. SPITZER

# Exhibit 1

*ACLU v. DOJ*

Plaintiffs' Motion to Consolidate

ANN BEESON
*ASSOCIATE LEGAL DIRECTOR*



December 20, 2005

FOIA/PA Mail Referral Unit
Justice Management Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW.
Washington, DC 20530-0001.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
NATIONAL OFFICE
125 BROAD STREET, 18TH FL.
NEW YORK, NY 10004-2400
T/212.549.2601
F/212.549.2651
ABEESON@ACLU.ORG
WWW.ACLU.ORG

Re:    **REQUEST UNDER FREEDOM OF INFORMATION ACT /**
       **Expedited Processing Requested**

Attention:

    This letter constitutes a request by the American Civil Liberties Union
and the American Civil Liberties Union Foundation ("ACLU") under the
Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and the Department of
Justice implementing regulations, 28 CFR § 16.11.[1]

## I.    The Request for Information

    The ACLU seeks disclosure of any presidential order(s) authorizing
the NSA to engage in warrantless electronic surveillance[2] and/or warrantless
physical searches in the United States, created from September 11, 2001 to the
present.[3]

---

[1] The American Civil Liberties Union Foundation is a 501(c)(3) organization that provides
legal representation free of charge to individuals and organizations in civil rights and civil
liberties cases, and educates the public about civil rights and civil liberties issues. The
American Civil Liberties Union is a separate non-profit, non-partisan, 501(c)(4) membership
organization that educates the public about the civil liberties implications of pending and
proposed state and federal legislation, provides analyses of pending and proposed legislation,
directly lobbies legislators, and mobilizes its members to lobby their legislators.
[2] The term "electronic surveillance" includes but is not limited to warrantless acquisition of
the contents of any wire or radio communication by an electronic, mechanical, or other
surveillance device, and the warrantless installation or use of an electronic, mechanical, or
other surveillance device for monitoring to acquire information, other than from a wire or
radio communication.
[3] This request does not include surveillance authorized by 50 U.S.C. §§ 1802 or 1822(a).

1

In addition, the ACLU seeks disclosure of any record(s),[4] document(s), file(s), communications, memorandum(a), order(s), agreement(s) and/or instruction(s), created from September 11, 2001 to the present, about:

1. any presidential order(s) authorizing the NSA to engage in warrantless electronic surveillance and/or warrantless physical searches in the United States;

2. the policies, procedures and/or practices of the NSA:

    a. for identifying individuals, organizations or entities to subject to warrantless electronic surveillance and/or warrantless physical searches in the United States, including but not limited to any "checklist to follow in deciding whether probable cause existed to start monitoring someone's communications,"[5] or a requirement that there be a "clear link" between terrorist organizations and individuals subject to such surveillance;[6]

    b. for gathering information through warrantless electronic surveillance and/or warrantless physical searches in the United States;

    c. governing the maintenance and/or storage of information described in paragraph 2(b) above;

    d. for analyzing and using information described in paragraph 2(b) above;

    e. for sharing information described in paragraph 2(b) above with other government agencies;

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

[4] The term "records" as used herein includes all records or communications preserved in electronic or written form, including but not limited to correspondence, documents, data, videotapes, audio tapes, faxes, files, guidance, guidelines, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, protocols, reports, rules, technical manuals, technical specifications, training manuals, or studies.

[5] James Risen and Eric Lichtblau, *Bush Lets U.S. Spy on Callers Without Courts*, New York Times, Dec. 16, 2005, at A1, A16.

[6] Transcript, President Bush's Address, Dec. 17, 2005, available at http://www.nytimes.com/2005/12/17/politics/17text-bush.html

2

f.  for sharing information described in paragraph 2(b) above to be "used as the basis for F.I.S.A. warrant requests from the Justice Department," [7] or any other form of warrant;

g.  for cross referencing information described in paragraph 2(b) above with information about other individuals, organizations, or groups;

h.  for cross-referencing information described in paragraph 2(b) above with information in any database;

i.  to suspend and/or terminate warrantless electronic surveillance and/or physical searches in the United States by the NSA;

j.  governing the destruction of information described in paragraph 2(b) above;

k.  for protecting the privacy of individuals who are subject to warrantless electronic surveillance and/or warrantless physical searches in the United States;

l.  for consulting with, or obtaining approval from, the Justice Department or other departments, agencies, and/or executive branch officials before engaging in warrantless electronic surveillance and/or warrantless physical searches in the United States;

m.  any minimization procedure, as that term is defined in 50 U.S.C.§ 1801(h), for information described in paragraph 2(b) above;

3.  the name of other government agencies with whom the information described in part 2(b) above is shared;

4.  the date on which:

a.  President Bush signed an order permitting the NSA to engage in warrantless electronic surveillance and/or warrantless physical searches in the United States;

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

[7] Risen and Lichtblau, Dec. 16., at A16.

3

    b.  the NSA began engaging in warrantless electronic surveillance and/or warrantless physical searches in the United States;[8]

5.  the constitutionality, legality, and/or propriety of warrantless electronic surveillance and/or warrantless physical searches in the United States;

6.  any Justice Deparment "legal reviews of the program and its legal rationale."[9]

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

7.  any actual or potential violations of, or deviations from, any policy, procedure or practice related to warrantless electronic surveillance and/or warrantless physical searches in the United States by the NSA;

8.  any investigation, inquiry, or disciplinary proceeding initiated in response to any actual or potential violations of, or deviations from, any policy, procedure or practice related to warrantless electronic surveillance and/or warrantless physical searches in the United States by the NSA;

9.  any Department of Justice audit of any NSA program carrying out warrantless electronic surveillance and/or warrantless physical searches in the United States;[10]

10. the number of:

    a.  individuals who have been subjected to warrantless electronic surveillance in the United States by the NSA since September 11, 2001;

---

[8] It is unclear when the NSA began its domestic surveillance program and when the President provided written authorization for it to do so. On December 18, 2005, the New York Times reported that the NSA "first began to conduct warrantless surveillance on telephone calls and e-mail messages between the United States and Afghanistan months before President Bush officially authorized a broader version of the agency's special domestic collection program." Eric Lichtblau and James Risen, *Eavesdropping Effort Began Soon After Sept. 11 Attacks*, New York Times, Dec. 18, 2005.

[9] Eric Lichtblau and David E. Sanger, *Administration Cites War Vote in Spying Case*, New York Times, Dec. 20, 2005.

[10] Risen and Lichtblau, Dec. 16, at A16 (describing such an audit as taking place on or after 2004).

    b.  individuals who have been subjected to warrantless physical searches in the United States by the NSA since September 11, 2001;

    c.  organizations or entities that have been subjected to warrantless electronic surveillance in the United States by the NSA since September 11, 2001;

    d.  organizations or entities that have been subjected to warrantless physical searches in the United States by the NSA since September 11, 2001;

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

11.  the average and maximum[11] number of:

    a.  individuals who have been the target of warrantless electronic surveillance in the United States by the NSA at any one time since September 11, 2001;

    b.  individuals who have been the target of warrantless physical searches in the United States by the NSA at any one time since September 11, 2001;

    c.  organizations or entities that have been the target of warrantless electronic surveillance in the United States by the NSA at any one time since September 11, 2001;

    d.  organizations or entities that have been the target of warrantless physical searches in the United States by the NSA at any one time since September 11, 2001;

12.  the number of individuals who have been subjected to warrantless electronic surveillance and/or warrantless physical searches in the United States by the NSA who are United States citizens, lawful permanent residents, recipients of non-immigrant visas, lawful visitors without visas, and undocumented immigrants, respectively;

13.  the types of communications that have been subjected to warrantless electronic surveillance by the NSA, including but not limited to whether such communications were carried out via telephone, email,

---

[11] The New York Times reports that "officials familiar with [the program] say the N.S.A. eavesdrops without warrants on up to 500 people in the United States at any time." Risen and Lichtblau, Dec. 16, at A16.

5

instant messaging, chat, Voice Over IP, other Internet-based communications technologies, or in-person conversation;

14. elements of the NSA's warrantless surveillance program in the United States that were suspended or revamped after, "[i]n mid-2004, concerns about the program [were] expressed by national security officials, government lawyers and a judge"; [12]

15. concerns expressed by national security officials, government lawyers, judges and others regarding the NSA's warrantless surveillance program; [13]

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

16. the number of instances in which the Attorney General has authorized warrantless electronic surveillance and/or phsycial searches under 50 U.S.C. §§ 1802 or 1822(a), and copies of each certification; and

17. President Bush's periodic reauthorization of the NSA's warrantless surveillance in the United States, including but not limited to the frequency with which the President reviews the surveillance program, the exact number of times the President has reauthorized the program, the basis and/or criteria for continued authorization of the program, and other government officials, departments, and/or agencies involved in the review process. [14]

---

[12] Risen and Lichtblau, Dec. 16, at A16.
[13] *Id.*
[14] On December 17, 2005, President Bush said:
> The activities I authorized are reviewed approximately every 45 days. Each review is based on a fresh intelligence assessment of terrorist threats to the continuity of our government and the threat of catastrophic damage to our homeland. During each assessment, previous activities under the authorization are reviewed. The review includes approval by our nation's top legal officials, including the attorney general and the counsel to the president. I have reauthorized this program more than 30 times since the Sept. 11 attacks and I intend to do so for as long as our nation faces a continuing threat from Al Qaeda and related groups.

Transcript, President Bush's Address, December 17, 2005, available at http://www.nytimes.com/2005/12/17/politics/17text-bush.html. *See also* David E. Sanger, *In Address, Bush Says He Ordered Domestic Spying*, New York Times, December 18, 2005.

## II.    Limitation of Processing Fees

The ACLU requests a limitation of processing fees pursuant to 5
U.S.C. § 552(a)(4)(A)(ii)(II) ("fees shall be limited to reasonable standard
charges for document duplication when records are not sought for commercial
use and the request is made by . . . a representative of the news media . . .")
and 28 C.F.R. §§ 16.11(c)(1)(i), 16.11(d)(1) (search and review fees shall not
be charged to "representatives of the news media."). As a "representative of
the news media," the ACLU fits within this statutory and regulatory mandate.
Fees associated with the processing of this request should, therefore, be
limited accordingly.

The ACLU meets the definition of a "representative of the news
media" because it is "an entity that gathers information of potential interest to
a segment of the public, uses its editorial skills to turn raw materials into a
distinct work, and distributes that work to an audience." National Security
Archive v. Department of Defense, 880 F.2d 1381, 1387 (D.C. Cir. 1989).

The ACLU is a national organization dedicated to the defense of civil
rights and civil liberties. Dissemination of information to the public is a
critical and substantial component of the ACLU's mission and work.
Specifically, the ACLU publishes newsletters, news briefings, right-to-know
documents, and other educational and informational materials that are broadly
disseminated to the public. Such material is widely available to everyone,
including individuals, tax-exempt organizations, not-for-profit groups, law
students and faculty, for no cost or for a nominal fee through its public
education department. The ACLU also disseminates information through its
heavily visited web site: http://www.aclu.org/. The web site addresses civil
rights and civil liberties issues in depth, provides features on civil rights and
civil liberties issues in the news, and contains many thousands of documents
relating to the issues on which the ACLU is focused. The website specifically
includes features on information obtained through the FOIA. See, e.g.,
www.aclu.org/patriot_foia; www.aclu.org/torturefoia;
http://www.aclu.org/spyfiles. The ACLU also publishes an electronic
newsletter, which is distributed to subscribers by e-mail.

In addition to the national ACLU offices, there are 53 ACLU affiliate
and national chapter offices located throughout the United States and Puerto
Rico. These offices further disseminate ACLU material to local residents,
schools and organizations through a variety of means including their own
websites, publications and newsletters. Further, the ACLU makes archived

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

material available at the American Civil Liberties Union Archives, Public
Policy Papers, Department of Rare Books and Special Collections, Princeton
University Library. ACLU publications are often disseminated to relevant
groups across the country, which then further distribute them to their members
or to other parties.

Depending on the results of the Request, the ACLU plans to
"disseminate the information" gathered by this Request "among the public"
through these kinds of publications in these kinds of channels. The ACLU is
therefore a "news media entity." Cf. Electronic Privacy Information Ctr. v.
Department of Defense, 241 F.Supp.2d 5, 10-15 (D.D.C. 2003) (finding non-
profit public interest group that disseminated an electronic newsletter and
published books was a "representative of the media" for purposes of FOIA).

Finally, disclosure is not in the ACLU's commercial interest. The
ACLU is a "non-profit, non-partisan, public interest organization." See
Judicial Watch Inc. v. Rossotti, 326 F.3d 1309, 1310 (D.C. Cir. 2003). Any
information disclosed by the ACLU as a result of this FOIA will be available
to the public at no cost.

### III.    Waiver of all Costs

The ACLU additionally requests a waiver of all costs pursuant to 5
U.S.C. §552(a)(4)(A)(iii) ("Documents shall be furnished without any charge .
. . if disclosure of the information is in the public interest because it is likely to
contribute significantly to public understanding of the operations or activities
of the government and is not primarily in the commercial interest of the
requester."). Disclosure in this case meets the statutory criteria, and a fee
waiver would fulfill Congress's legislative intent in amending FOIA. See
Judicial Watch, Inc. v. Rossotti, 326 F.3d 1309, 1312 (D.C. Cir. 2003)
("Congress amended FOIA to ensure that it be 'liberally construed in favor of
waivers for noncommercial requesters.'").

Disclosure of the requested information is in the public interest. This
request will further public understanding of government conduct; specifically,
the NSA's warrantless electronic surveillance and/or physical searches in the
United States. This type of government activity concretely affects many
individuals and implicates basic privacy, free speech, and associational rights
protected by the Constitution.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

8

Moreover, disclosure of the requested information will aid public understanding of the implications of the President's decision to permit the NSA to engaging in warrantless electronic surveillance and/or physical searches in the United States and, consequently, to circumvent the judicial oversight required by the Foreign Intelligence Surveillance Act of 1978.[15] Congress passed this Act in response to scandalous revelations about widespread political surveillance by the FBI under the leadership of J. Edgar Hoover. Following those revelations, Congress convened hearings and established a commission to investigate the government's abuses and explore how best to prevent future excesses. The hearings, chaired by Idaho Senator Frank Church, revealed that the government had infiltrated civil rights and peace groups, had burglarized political groups to gain information about their members and activities, and had "swept in vast amounts of information about the personal lives, views, and associations of American citizens."[16] Understanding the current scope of the NSA's warrantless surveillance is, therefore, crucial to the public's interest in understanding the legality and consequences of the President's order and the NSA's current surveillance practices.

As a nonprofit 501(c)(3) organization and "representative of the news media" as discussed in Section II, the ACLU is well-situated to disseminate information it gains from this request to the general public and to groups that protect constitutional rights. Because the ACLU meets the test for a fee waiver, fees associated with responding to FOIA requests are regularly waived for the ACLU.[17]

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

[15] 50 U.S.C. § 1801 *et seq.*

[16] INTELLIGENCE ACTIVITIES AND THE RIGHTS OF AMERICANS, BOOK II: FINAL REPORT OF THE SELECT COMMITTEE TO STUDY GOVERNMENTAL OPERATIONS WITH RESPECT TO INTELLIGENCE ACTIVITIES. UNITED STATES SENATE. APRIL 26, 1976. *Available at* http://www.icdc.com/~paulwolf/cointelpro/churchfinalreportIIa.htm.

[17] For example, in May 2005, the United States Department of Commerce granted a fee waiver to the ACLU with respect to its request for information regarding the radio frequency identification chips in United States passports. In March 2005, the Department of State granted a fee waiver to the ACLU with regard to a request submitted that month regarding the use of immigration laws to exclude prominent non-citizen scholars and intellectuals from the country because of their political views, statements, or associations. Also, the Department of Health and Human Services granted a fee waiver to the ACLU with regard to a FOIA request submitted in August of 2004. In addition, the Office of Science and Technology Policy in the Executive Office of the President said it would waive the fees associated with a FOIA request submitted by the ACLU in August 2003. In addition, three separate agencies – the Federal Bureau of Investigation, the Office of Intelligence Policy and Review, and the Office of Information and Privacy in the Department of Justice – did not charge the ACLU fees associated with a FOIA request submitted by the ACLU in August 2002.

9

The records requested are not sought for commercial use, and the requesters plan to disseminate the information disclosed as a result of this FOIA request through the channels described in Section II. As also stated in Section II, the ACLU will make any information disclosed as a result of this FOIA available to the public at no cost.

## IV.     Expedited Processing Request

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

Expedited processing is warranted because there is "[a]n urgency to inform the public about an actual or alleged federal government activity" by organizations "primarily engaged in disseminating information." 28 CFR § 16.5(d)(1)(ii).[18] This request implicates an urgent matter of public concern; namely, the NSA's potentially extensive warrantless electronic surveillance and/or physical searches in the United States. Such government activity may infringe upon the public's free speech, free association, and privacy rights, which are guaranteed by the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Requests for information bearing upon potential Constitutional violations require an immediate response so that any violations cease and future violations are prevented.

A requestor may also demonstrate the need for expedited processing by showing that the information sought relates to "a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(d)(1)(iv). The instant request clearly meets these standards as the request relates to possible violations of Constitutional rights by federal law enforcement officials. It took less than a day for Arlen Specter, the Republican chairman of the Senate Judiciary Committee, to pledge that the Senate would hold hearings to investigate the NSA's warrantless surveillance. Jennifer Loven, *Report of NSA Spying Prompts Call for Probe*, San Francisco Chronicle, Dec. 16, 2005. That the President chose to give a rare, live radio address providing additional information about the NSA's warrantless surveillance the day after it was revealed underscores the urgency of the ACLU's request. The urgent and time sensitive nature of the request is also apparent from the widespread and sustained media coverage the NSA's warrantless domestic surveillance activities have garnered. *See, e.g.,* James Risen and Eric Lichtblau, *Bush Lets U.S. Spy on Callers Without Courts*, New

---

[18] The ACLU is "primarily engaged in disseminating information," as discussed in Sections II and III.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

York Times, Dec. 16, 2005, at A1; Maura Reynolds and Greg Miller, *Congress Wants Answers About Spying on U.S. Citizens*, Pittsburgh Post-Gazette, Dec. 16, 2005; Steven Thomma, *Spying Could Create Backlash on Congress; Public Reaction Hinges on Identity of Targets*, San Jose Mercury News, Dec. 16, 2005; Christine Hauser, *Bush Declines to Discuss Report on Eavesdropping*, New York Times, Dec. 16, 2005; Katherine Shrader, *Lawmakers Say Reported Spy Program Shocking, Call For Investigations*, San Diego Union Tribune, Dec. 16, 2005; Caren Bohan and Thomas Ferraro, *Bush Defends Eavesdropping and Patriot Act*, ABC News, Dec. 17, 2005; Dan Eggan and Charles Lane, *On Hill, Anger and Calls for Hearing Greet News of Stateside Surveillance*, Washington Post, Dec. 17, 2005, at A1; Jennifer Loven, *Bush Defends Secret Spying in U.S.*, San Francisco Chronicle, Dec. 17, 2005; Barton Gellman and Dafna Linzer, *Pushing the Limits of Wartime Powers*, Washington Post, Dec. 18, 2005, at A1; John Diamond, *NSA's Surveillance of Citizens Echoes 1970s Controversy*, USA Today, Dec. 18, 2005; James Kuhnhenn, *Bush Defends Spying in U.S.*, San Jose Mercury News, Dec. 18, 2005; Fred Barbash and Peter Baker, *Gonzales Defends Eavesdropping Program*, Washington Post, Dec. 19, 2005; Todd J. Gillman, *Bush Assails Disclosure of Domestic Spying Program*, San Jose Mercury News, Dec. 19, 2005; David Stout, *Bush Says U.S. Spy Program is Legal and Essential*, New York Times, Dec. 19, 2005; James Gerstenzang, *Bush Vows to Continue Domestic Surveillance*, L.A. Times, Dec. 19, 2005; Terence Hunt, *Bush Says NSA Surveillance Necessary, Legal*, Washington Post, Dec. 19, 2005; George E. Condon, *Bush Says Spying Is Needed To Guard US*, San Diego Union Tribune, Dec. 20, 2005; Jeff Zeleny, *No 'Unchecked Power' In Domestic Spy Furor*, Chicago Tribune, Dec. 20, 2005; Michael Kranish, *Bush Calls Leak of Spy Program Shameful*, Boston Globe, Dec. 20, 2005; Craig Gordon, *For Bush, 9/11 Justifies Eavesdropping*, Newsday, Dec. 20, 2005; Terence Hunt, *Bush Defends Domestic Spying Program as Effective Tool in War on Terror*, Detroit Free Press, Dec. 19, 2005.

Finally, pursuant to applicable regulations and statute, the ACLU expects the determination of this request for expedited processing within 10 calendar days and the determination of this request for documents within 20 days. *See* 28 CFR § 16.5(d)(4); 5 U.S.C. § 552(a)(6)(A)(i).

If this request is denied in whole or in part, we ask that you justify all deletions by reference to specific exemptions to FOIA. The ACLU expects the release of all segregable portions of otherwise exempt material. The ACLU reserves the right to appeal a decision to withhold any information or to deny a waiver of fees.

11

Thank you for your prompt attention to this matter. Please furnish all applicable records to:

Ann Beeson
Associate Legal Director
American Civil Liberties Union
125 Broad Street, 18th floor
New York, NY 10004

I affirm that the information provided supporting the request for expedited processing is true and correct to the best of my knowledge and belief.

Sincerely,

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

Ann Beeson
Associate Legal Director
American Civil Liberties Union

Exhibit 2

*ACLU v. DOJ*

Plaintiffs' Motion to Consolidate

# The National Security Archive

The George Washington University
Gelman Library, Suite 701
2130 H Street, N.W.
Washington, D.C. 20037

Phone: 202/994-7000
Fax: 202/994-7005
nsarchiv@gwu.edu
www.nsarchive.org

December 21, 2005

Elizabeth Farris, Supervisory Paralegal
Office of Legal Counsel
Department of Justice
Room 5515, 950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

RE: **Request under the FOIA, in reply refer to Archive #20051739DOJ025**

Dear Ms. Farris:

Pursuant to the Freedom of Information Act (FOIA), I hereby request copies of the following:

> *All memoranda, legal opinions, directives or instructions from the Attorney General, Assistant Attorney General, or the Office of Legal Counsel (OLC), issued between September 11, 2001 and December 21, 2005, regarding the government's legal authority for surveillance activity, wiretapping, eavesdropping, and other signals intelligence operations directed at communications to or from U.S. citizens. Please include all documents discussing the President's surveillance authority under the September 2001 congressional use of force resolution as well as the President's independent ability to authorize signals intelligence activities.*

The description of the requested legal opinions in a recent *New York Times* article (David Johnston and Linda Greenhouse, "'01 Resolution is Central to '05 Controversy," *New York Times*, Dec. 20, 2005) suggests that OLC has conducted an analysis as to the proper interpretation of constitutional presidential powers of surveillance. Although some portions of the opinions that specifically identify surveillance measures and technology may be properly classified, at least some portions of these records—namely those reflecting OLC's conclusive opinion as to the legal question at issue—are neither deliberative and predecisional nor inseparable as objective legal determinations that do not reveal particular facts about intelligence sources and methods. Rather, such legal opinions serve to inform the President, and thus are the administration's settled interpretation of a point of law.

Further, it is true that executive branch agencies are entitled to protection of the attorney-client privilege and so under FOIA Exemption 5 are not required to disclose confidential communications that would not be discoverable in ordinary civil litigation. *EPA v. Mink*, 410 U.S. 73, 85 (1973). Courts have held, however, that where the client agency is seeking legal guidance and the responsive communications "do not contain any confidential information *concerning the Agency*," they must be disclosed under FOIA. *Schlefer v. United States*, 702 F.2d 233, 245 (D.C.Cir. 1983). For example, Field Service Advice Memoranda (FSAs)—legal opinions issued at the request of IRS field offices by the IRS Office of Chief Counsel—were ordered disclosed because they did not involve confidential information concerning the IRS but rather answered a legal question in general or objective terms. *Tax Analysts v. IRS*, 117 F.3d 607 (D.C. Cir. 1997).

Moreover, non-disclosure of the OLC opinion does not serve the purposes Congress intended for FOIA Exemption 5: "The disclosure of documents that authoritatively state an agency's position will neither inhibit the free

An Independent non-governmental research institute and library located at the George Washington University, the Archive collects and publishes declassified documents obtained through the Freedom of Information Act. Publication royalties and tax deductible contributions through The National Security Archive Fund, Inc. underwrite the Archive's Budget.

exchange of views within the agency nor confuse the public, because the agency's own purpose in preparing such documents is to obviate the need for further intra-agency deliberation on the matters addressed." *Schlefer*, 702 F.2d at 237. The OLC is not a policy-making body, nor does it, in the context of issuing legal opinions, form part of a deliberative inter-agency process for setting policy; rather, OLC responds to "requests typically deal[ing] with legal issues of particular complexity and importance or about which two or more agencies are in disagreement," conclusively resolving questions or disputes within the executive branch as to a particular legal matter. About OLC, http://www.usdoj.gov/olc/index.html (last visited July 27, 2005).

Disclosure of those portions of the OLC memorandum that contain unclassified, non-confidential factual information or final legal opinions regarding surveillance programs conducted at the direction of the President by the National Security Agency implicate an important public interest and fulfill an underlying purpose of the FOIA. The FOIA "was designed to expose operations of federal agencies to public scrutiny without endangering efficient administration, as means of deterring development and application of a body of secret law." *Providence Journal Co. v. United States Dep't of the Army*, 981 F.2d 552, 556 (1st Cir. 1992). I ask that you provide any releasable materials related to the Department's legal opinions on surveillance of individuals, including U.S. citizens, within the United States. It is critical, at this time in our history, for the American public to know and understand the motives and actions of the Government in the conduct of counter-terrorism operations, and particularly where such operations may infringe on the settled civil liberties guaranteed by the Constitution.

If you regard any of these documents as potentially exempt from the FOIA's disclosure requirements, I request that you nonetheless exercise your discretion to disclose them. As the FOIA requires, please release all reasonably segregable non-exempt portions of documents. To permit me to reach an intelligent and informed decision as to whether or not to file an administrative appeal of any denied material, please describe any withheld records (or portions thereof) and explain the basis for your exemption claims.

As you know, the National Security Archive qualifies for a waiver of search and review fees as a representative of the news media. This request is made as part of a scholarly and news research project and not for commercial use. For details on the Archive's research and publication activities, please see our Web site at the address above. Please notify me before incurring any photocopying costs over $100.

To expedite the release of the requested documents, please disclose them on an interim basis as they become available to you, without waiting until all the documents have been processed. If you have any questions regarding the identity of the records, their location, the scope of the request or any other matters, please call me at (202) 994-7219 or email at adairk@gwu.edu. I look forward to receiving your response within the twenty day statutory time period.

Sincerely yours,

Kristin Adair

An Independent non-governmental research institute and library located at the George Washington University, the Archive collects and publishes declassified documents obtained through the Freedom of Information Act. Publication royalties and tax deductible contributions through The National Security Archive Fund, Inc. underwrite the Archive's Budget.

# The National Security Archive

The George Washington University
Gelman Library, Suite 701
2130 H Street, N.W.
Washington, D.C. 20037

Phone: 202/994-7000
Fax: 202/994-7005
nsarchiv@gwu.edu
www.nsarchive.org

December 22, 2005

Melanie Ann Pustay, Deputy Director
Office of Information and Privacy
Department of Justice
Suite 570, Flag Building
Washington, DC 20530-0001

**RE: <u>Request under the FOIA, in reply refer to Archive # 20051742DOJ026</u>**

Dear Ms. Pustay:

Pursuant to the Freedom of Information Act (FOIA), I hereby request copies of the following:

> *All memoranda, legal opinions, directives or instructions from the Attorney General, Assistant Attorney General, or the Office of Legal Counsel (OLC), issued between September 11, 2001 and December 21, 2005, regarding the government's legal authority for surveillance activity, wiretapping, eavesdropping, and other signals intelligence operations directed at communications to or from U.S. citizens. Please include all documents discussing the President's surveillance authority under the September 2001 congressional use of force resolution as well as the President's independent ability to authorize signals intelligence activities.*

The description of the requested legal opinions in a recent *New York Times* article (David Johnston and Linda Greenhouse, "'01 Resolution is Central to '05 Controversy," *New York Times*, Dec. 20, 2005) suggests that OLC has conducted an analysis as to the proper interpretation of constitutional presidential powers of surveillance. Although some portions of the opinions that specifically identify surveillance measures and technology may be properly classified, at least some portions of these records—namely those reflecting OLC's conclusive opinion as to the legal question at issue—are neither deliberative and precedecisional nor inseparable as objective legal determinations that do not reveal particular facts about intelligence sources and methods. Rather, such legal opinions serve to inform the President, and thus are the administration's settled interpretation of a point of law.

Further, it is true that executive branch agencies are entitled to protection of the attorney-client privilege and so under FOIA Exemption 5 are not required to disclose confidential communications that would not be discoverable in ordinary civil litigation. *EPA v. Mink*, 410 U.S. 73, 85 (1973). Courts have held, however, that where the client agency is seeking legal guidance and the responsive communications "do not contain any confidential information *concerning the Agency*," they must be disclosed under FOIA. *Schlefer v. United States*, 702 F.2d 233, 245 (D.C.Cir. 1983). For example, Field Service Advice Memoranda (FSAs)—legal opinions issued at the request of IRS field offices by the IRS Office of Chief Counsel—were ordered disclosed because they did not involve confidential information concerning the IRS but rather answered a legal question in general or objective terms. *Tax Analysts v. IRS*, 117 F.3d 607 (D.C. Cir. 1997).

Moreover, non-disclosure of the OLC opinion does not serve the purposes Congress intended for FOIA Exemption 5: "The disclosure of documents that authoritatively state an agency's position will neither inhibit the free exchange of views within the agency nor confuse the public, because the agency's own purpose in preparing such

An Independent non-governmental research institute and library located at the George Washington University, the Archive collects and publishes declassified documents obtained through the Freedom of Information Act. Publication royalties and tax deductible contributions through The National Security Archive Fund, Inc. underwrite the Archive's Budget.

documents is to obviate the need for further intra-agency deliberation on the matters addressed." *Schlefer*, 702 F.2d at 237. The OLC is not a policy-making body, nor does it, in the context of issuing legal opinions, form part of a deliberative inter-agency process for setting policy; rather, OLC responds to "requests typically deal[ing] with legal issues of particular complexity and importance or about which two or more agencies are in disagreement," conclusively resolving questions or disputes within the executive branch as to a particular legal matter. About OLC, http://www.usdoj.gov/olc/index.html (last visited July 27, 2005).

Disclosure of those portions of the OLC memorandum that contain unclassified, non-confidential factual information or final legal opinions regarding surveillance programs conducted at the direction of the President by the National Security Agency implicate an important public interest and fulfill an underlying purpose of the FOIA. The FOIA "was designed to expose operations of federal agencies to public scrutiny without endangering efficient administration, as means of deterring development and application of a body of secret law." *Providence Journal Co. v. United States Dep't of the Army*, 981 F.2d 552, 556 (1st Cir. 1992). I ask that you provide any releasable materials related to the Department's legal opinions on surveillance of individuals, including U.S. citizens, within the United States. It is critical, at this time in our history, for the American public to know and understand the motives and actions of the Government in the conduct of counter-terrorism operations, and particularly where such operations may infringe on the settled civil liberties guaranteed by the Constitution.

If you regard any of these documents as potentially exempt from the FOIA's disclosure requirements, I request that you nonetheless exercise your discretion to disclose them. As the FOIA requires, please release all reasonably segregable non-exempt portions of documents. To permit me to reach an intelligent and informed decision as to whether or not to file an administrative appeal of any denied material, please describe any withheld records (or portions thereof) and explain the basis for your exemption claims.

As you know, the National Security Archive qualifies for a waiver of search and review fees as a representative of the news media. This request is made as part of a scholarly and news research project and not for commercial use. For details on the Archive's research and publication activities, please see our Web site at the address above. Please notify me before incurring any photocopying costs over $100.

To expedite the release of the requested documents, please disclose them on an interim basis as they become available to you, without waiting until all the documents have been processed. If you have any questions regarding the identity of the records, their location, the scope of the request or any other matters, please call me at (202) 994-7219 or email at adairk@gwu.edu. I look forward to receiving your response within the twenty day statutory time period.

Sincerely yours,

Kristin Adair

# The National Security Archive

**The George Washington University**
**Gelman Library, Suite 701**
**2130 H Street, N.W.**
**Washington, D.C. 20037**

**Phone: 202/994-7000**
**Fax: 202/994-7005**
**nsarchiv@gwu.edu**
**www.nsarchive.org**

January 9, 2006

To: Ms. Elizabeth Farris, Supervisory Paralegal, Office of Legal Counsel

From: Meredith Fuchs – National Security Archive
               On behalf of Kristin Adair

RE: <u>Addendum to Freedom of Information Act Request</u>

**FOIA Number - 20051739DOJ025 – Faxed on 12/22/2005 (Attached)**

I would like to amend Kristin Adair's December 21, 2005 (Faxed on December 22, 2005) FOIA request to request expedited processing.

This FOIA request clearly meets the criteria for expedited processing under applicable provisions of the Freedom of Information Act, 5 U.S.C. § 552 (a)(E), as there exists a "compelling need" to review materials because the information is sought "by a person primarily engaged in disseminating information," and is "urgen[tly] [needed] to inform the public concerning actual or alleged Federal Government activity."

Please keep in mind that the documents requested are specifically and directly associated with an immediate current breaking news story of great general public interest whose focus involves questions regarding the government's integrity, namely the potentially extensive warrentless electronic surveillance activities undertaken within the United States, which affects public confidence. There has been widespread and sustained media coverage of this issue, effort by the President to provide additional information to the public and immediate congressional inquiry into the policies in question. Substantial privacy, free speech and free association concerns would be harmed by the failure to process this request immediately as the current controversy regards government domestic surveillance policy. There is a compelling need to review and release these documents as the current allegations of surveillance activity and the investigation into the legal authority for these actions are an immediate concern to the general public. The value of the information in these records will be lost if the information is not disseminated quickly. See generally 22 C.F.R. § 171.12. I certify that the statements contained in this letter regarding the alleged abuses and public concern are true and correct to the best of my knowledge.

I appreciate your consideration of this addendum and I look forward to your response. If you have any questions or concerns, please contact me at (202) 994-7059 or at mfuchs@gwu.edu.

Sincerely,

Meredith Fuchs
General Counsel

An Independent non-governmental research institute and library located at the George Washington University, the Archive collects and publishes declassified documents obtained through the Freedom of Information Act. Publication royalties and tax deductible contributions through The National Security Archive Fund, Inc. underwrite the Archive's Budget.

# The National Security Archive

**The George Washington University**
**Gelman Library, Suite 701**
**2130 H Street, N.W.**
**Washington, D.C. 20037**

**Phone: 202/994-7000**
**Fax: 202/994-7005**
**nsarchiv@gwu.edu**
**www.nsarchive.org**

January 9, 2006

To: Ms. Melanie Ann Pustay, Deputy Director Office of Information and Privacy

From: Meredith Fuchs – National Security Archive
            On behalf of Kristin Adair

RE: <u>Addendum to Freedom of Information Act Request</u>

**FOIA Number – 20051742DOJ026 – Faxed on 12/22/2005 (Attached)**

I would like to amend Kristin Adair's December 22, 2005 FOIA request to request expedited processing.

This FOIA request clearly meets the criteria for expedited processing under applicable provisions of the Freedom of Information Act, 5 U.S.C. § 552 (a)(E), as there exists a "compelling need" to review materials because the information is sought "by a person primarily engaged in disseminating information," and is "urgen[tly] [needed] to inform the public concerning actual or alleged Federal Government activity."

Please keep in mind that the documents requested are specifically and directly associated with an immediate current breaking news story of great general public interest whose focus involves questions regarding the government's integrity, namely the potentially extensive warrentless electronic surveillance activities undertaken within the United States, which affects public confidence. There has been widespread and sustained media coverage of this issue, effort by the President to provide additional information to the public and immediate congressional inquiry into the policies in question. Substantial privacy, free speech and free association concerns would be harmed by the failure to process this request immediately as the current controversy regards government domestic surveillance policy. There is a compelling need to review and release these documents as the current allegations of surveillance activity and the investigation into the legal authority for these actions are an immediate concern to the general public. The value of the information in these records will be lost if the information is not disseminated quickly. See generally 22 C.F.R. § 171.12. I certify that the statements contained in this letter regarding the alleged abuses and public concern are true and correct to the best of my knowledge.

I appreciate your consideration of this addendum and I look forward to your response. If you have any questions or concerns, please contact me at (202) 994-7059 or at mfuchs@gwu.edu.

Sincerely,

Meredith Fuchs
General Counsel

An Independent non-governmental research institute and library located at the George Washington University, the Archive collects and publishes declassified documents obtained through the Freedom of Information Act. Publication royalties and tax deductible contributions through The National Security Archive Fund, Inc. underwrite the Archive's Budget.