### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ELECTRONIC PRIVACY INFORMATION CENTER,**<br><br>　　　　　　　**Plaintiff,**<br>v.<br><br>**DEPARTMENT OF JUSTICE,**<br><br>　　　　　　**Defendant.** | **Civil Action 06-00096 (HHK)** |
| **AMERICAN CIVIL LIBERTIES UNION, et al.,**<br><br>　　　　　　　**Plaintiffs,**<br>v.<br><br>**DEPARTMENT OF JUSTICE,**<br><br>　　　　　　**Defendant.** | **Civil Action 06-00214 (HHK)** |

### MEMORANDUM OPINION AND ORDER

In these consolidated actions, plaintiffs Electronic Privacy Information Center ("EPIC"),

American Civil Liberties Union, American Civil Liberties Union Foundation (collectively

"ACLU"), and The National Security Archive Fund, Inc. ("NSAF")[1] bring claims against the

Department of Justice ("DOJ") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552,

seeking the release of agency records regarding the Bush Administration's policy of conducting

surveillance of domestic communications without the prior authorization of the Foreign

---

[1] Hereinafter, the court will refer to all plaintiffs collectively as "EPIC" unless otherwise stated.

Intelligence Surveillance Court ("FISA Court").[2]  Before the court are two motions: DOJ's motion for summary judgment and EPIC's motion for *in camera* review of withheld records. Upon consideration of the motions, the oppositions thereto, and the record of the case, the court concludes that the motion for summary judgment must be granted in part, denied in part, and held in abeyance in part, and that the motion for *in camera* review must be denied without prejudice.

## I. FACTUAL BACKGROUND

**A.    Plaintiffs' FOIA Requests**

On December 16, 2005, the *New York Times* first reported that President Bush "secretly authorized the National Security Agency to eavesdrop on Americans and others inside the United States to search for evidence of terrorist activity without the court-approved warrants ordinarily required for domestic spying."  James Risen & Eric Lichtblau, *Bush Lets U.S. Spy on Callers Without Courts,* N.Y. TIMES, Dec. 16, 2005; Pls.' Mot. for Prelim. Inj. Ex. 1.  The *Times* also reported that the purported legal justification for the warrantless surveillance program had been developed by DOJ attorneys and officials, that DOJ "audited the N.S.A. program," and that DOJ "expanded and refined a checklist to follow in deciding whether probable cause existed to start monitoring someone's communications."  *Ibid.*[3]

In response to this news, EPIC submitted four FOIA requests that same day to four DOJ departments — the Office of the Attorney General ("OAG"), the Office of Intelligence Policy

---

[2] "FISA" refers to the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1801 *et seq.*

[3] In its submissions, DOJ has identified the surveillance activities at issue to be the so-called "Terrorism Surveillance Program," or "TSP." Def.'s Ex. A ¶¶ 18–20 (Decl. of Bradbury).

and Review ("OIPR"), the Office of Legal Counsel ("OLC"), and the Office of Legal Policy

("OLP") — citing the *Times* article and requesting records "from September 11, 2001 to the

present concerning a presidential order or directive authorizing the National Security Agency

('NSA'), or any other component of the intelligence community, to conduct domestic

surveillance without the prior authorization of the Foreign Intelligence Surveillance Court."  Pl.'s

Mot. for Prelim. Inj., Exs. 7, 8, 9 & 10.  EPIC specifically sought the following items:

> (1)     an audit of NSA domestic surveillance activities;
> (2)     guidance or a "checklist" to help decide whether probable cause exists to monitor
>          an individual's communications;
> (3)     communications concerning the use of information obtained through NSA
>          domestic surveillance as the basis for DOJ surveillance applications to the [FISA
>          Court]; and
> (4)     legal memoranda, opinions or statements concerning increased domestic
>          surveillance, including one authored by John C. Yoo shortly after September 11,
>          2001 discussing the potential for warrantless use of enhanced electronic
>          surveillance techniques.

*Id.*

ACLU and NSAF submitted similar requests.  ACLU requested any presidential orders

authorizing the NSA to engage in warrantless electronic surveillance.  Bradbury Decl. Ex. B.  It

also requested records relating to the policies, practices and procedures of the NSA (1) for

selecting individuals to subject to warrantless domestic surveillance; (2) for gathering,

maintaining, storing, and sharing information generated through such surveillance; (3) for using

gathered information as the basis for FISA requests; and (4) for consulting with, or obtaining

approval from, DOJ, before engaging in warrantless electronic surveillance.  *Ibid.*  ACLU also

requested any DOJ "legal reviews of the program and its legal rationale," any DOJ audit of the

program, and any other records on the constitutionality, legality, and/or propriety of the NSA's

warrantless domestic spying.  *Ibid.*  NSAF sought copies of "[a]ll memoranda, legal opinions,

directives or instructions from [DOJ departments] issued between September 11, 2001, and

December 21, 2005, regarding the government's legal authority for surveillance activity,

wiretapping, eavesdropping, and other signals intelligence operations directed at communications

to or from U.S. citizens."  Bradbury Decl. Ex. C.  NSAF also sought the inclusion of "all

documents discussing the President's surveillance authority under the September 2001

congressional use of force resolution as well as the President's independent ability to authorize

signals intelligence activities."  *Ibid.*

After the court granted EPIC's motion for expedited processing and consolidated these

actions, DOJ substantially completed its response to plaintiffs' requests.[4]  DOJ released a small

number of documents and claimed exemptions under FOIA from the obligation to release

documents as to the majority of the requested records.  The present motions followed.  In support

of its motion, DOJ has submitted a series of *ex parte* classified declarations (from various DOJ

departments and NSA) for the court's review, redacted versions of which have been filed on the

public record.[5]

---

[4] In processing these requests, the responding DOJ departments referred certain
documents in their possession to each other and to other departments, based on their
determinations as to which department had appropriate primary custodial responsibility for each
document or category of documents.  The primary department then made the determination as to
whether the referred document or category of documents should be released.  Documents
requested from OAG (which appears to be represented in this matter for all purposes by the
Office of the Deputy Attorney General ("ODAG")) and OLP were referred to and processed by
DOJ's Office of Information and Privacy ("OIP").

[5] NSA has designated these declarations as being subject to an exceedingly high level of
secrecy under the Executive's classification policies.  *See* Def.'s Ex. G ¶¶ 11–12 (Decl. of
Rowan).  Without expressing approval or disapproval of DOJ's use of these *ex parte* declarations
— and without opining regarding whether the declaration redactions are legitimately classified

**B.**     **Scope Of The Dispute**

EPIC has disclaimed or withdrawn objections regarding (1) the adequacy of DOJ's

searches for responsive records; (2) drafts of documents and discussions about drafts and the

drafting process; (3) documents withheld by DOJ's Criminal Division; (4) records deemed to be

nonagency records; (5) duplicates of other documents deemed responsive and either released or

withheld by other departments; and (6) redactions of names and identifying information pursuant

to Exemptions 2, 6, and 7(C) (EPIC does not challenge the redactions themselves but does

challenge the withholding of entire documents which contain information protected by these

exemptions). Thus, the present controversy encompasses final (i.e., nondraft) nonduplicate

records withheld by each department other than the Criminal Division.

## II.  STATUTORY BACKGROUND

**A.**     **FOIA**

The purpose of FOIA is "to pierce the veil of administrative secrecy and open agency

action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)

(citation omitted). FOIA embodies "a general philosophy of full agency disclosure unless

information is exempted under clearly delineated statutory language." *Id.* at 360–61 (quoting

S. Rep. No. 89-813, at 3 (1965)). The language protecting information from disclosure is set

---

(beyond a measure of skepticism as to some portions thereof) — the court does express
substantial frustration with one aspect of the Executive's approach to this information:  In part
for purposes of this case, this judicial officer had his law clerk cleared through an extensive,
high-level background investigation so that the clerk would have access to classified information,
and specifically to the documents lodged in this case.  Notwithstanding the clearance obtained, it
has become apparent that the Executive will not grant the clerk access to the classified
declarations filed here, at least not in the absence of vociferous resistance from this judicial
officer.  This stance is baffling and has been significantly disruptive to the court's review of this
matter.

forth within FOIA itself in a series of exemptions that are customarily referred to by numbers

corresponding to the subsections in which the exemptions are enumerated. *See* 5 U.S.C.

§ 552(b). The Act mandates a "strong presumption in favor of disclosure," *U.S. Dep't of State v.*

*Ray*, 502 U.S. 164, 173 (1991), and the statutory exemptions to disclosure are to be "narrowly

construed," *Rose*, 425 U.S. at 361. At the same time, the exemptions are to be given

"meaningful reach and application." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152

(1989).

**B.      Segregability**

A government agency is required to assess the application of FOIA's exemptions with an

eye towards disclosure. As such, once an agency identifies information that it believes is exempt,

it must undertake a segregability analysis. The purpose of this assessment is to separate exempt

material from any nonexempt material, and to produce the nonexempt material. *See Vaughn v.*

*Rosen*, 484 F.2d 820, 825 (D.C. Cir. 1973) (stating that "an entire document is not exempt

merely because an isolated portion need not be disclosed" and than an "agency may not sweep a

document under a general allegation of exemption, even if that general allegation is correct with

regard to part of the information"). This exercise is mandated by FOIA itself, which provides

that any "reasonably segregable" information in exempt documents must be disclosed after

redaction of exempt information. 5 U.S.C. § 552(b). Thus disclosure of nonexempt portions of a

document is still required unless those portions are "inextricably intertwined with exempt

portions." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

"The 'segregability' requirement applies to all [§ 552] documents and all exemptions" in the Act.

*Schiller v. NLRB*, 964 F.2d 1205, 1209 (D.C. Cir. 1992) (quoting *Ctr. for Auto Safety v. EPA*, 731 F.2d 16, 21 (D.C. Cir. 1984)).

The court is required to make a specific finding as to segregability, *ibid.*; *see also Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999), and "the burden is on the agency to sustain its action," 5 U.S.C. § 552(a)(4)(B).  To satisfy this burden, "the withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'"  *Schiller*, 964 F.2d at 1210 (quoting *King v. U.S. Dep't of Justice*, 830 F.2d 210, 224 (D.C. Cir. 1987) (emphasis omitted)); *see also Vaughn*, 484 F.2d at 827 (an agency must "specify in detail which portions of the document are disclosable and which are allegedly exempt"); *Peter S. Herrick's Customs and Int'l Trade Newsletter v. U.S. Customs and Border Prot.*, 2005 WL 3274073, at *3 (D.D.C. Sept. 22, 2005) (finding that Customs did not meet the segregability requirement where its *Vaughn* index failed to identify each exemption with related material, explain why certain pages were withheld in full and others in part, or describe redacted information with useful detail).   The agency's justifications must focus on the withheld information, and thus "an agency cannot justify withholding an entire document simply by showing that it contains some exempt material." *Schiller*, 964 F.2d at 1209 (quoting *Mead Data Cent.*, 566 F.2d at 260).

In this case, which touches upon sensitive matters of a classified nature related to national security and counterterrorism operations, in particular by NSA (whose operations are protected from disclosure by statute, *see* 50 U.S.C. § 402 note; II.D, *infra*), the most relevant exemptions are Exemptions 1 and 3.  Exemption 1 protects classified information from disclosure and

Exemption 3 protects matters exempted by statutes other than FOIA.  5 U.S.C. § 552(b)(1), (3).

Additionally, because plaintiffs' requests seek information regarding DOJ's deliberations and

legal analyses regarding the potential propriety or impropriety of proposed surveillance actions,

Exemption 5 (which protects information that is privileged, i.e., "would not be available by law

to a party other than an agency in litigation with the agency," *id.* § 552(b)(5)) is also of central

importance.  These exemptions warrant a brief initial discussion.

**C.     Exemption 1**

Exemption 1 protects information "(A) specifically authorized under criteria established

by an Executive order to be kept secret in the interest of national defense or foreign policy [which

is (B)] in fact properly classified pursuant to such Executive order."  *Id.* § 552(b)(1).  As recently

summarized by this court, judicial review under this exemption is limited, but not insignificant:

> While an agency's declarations setting forth the reasons that information falls within this
> exemption are entitled to substantial weight, they must nevertheless afford the requester
> an ample opportunity to contest, and the court to review, the soundness of the
> withholding.  *Campbell v. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1998) (observing
> that "deference is not equivalent to acquiescence"); *Goldberg v. Dep't of State*, 818 F.2d
> 71, 76–77 (D.C. Cir. 1987) (noting that Exemption 1 does not relieve the courts of their
> "independent responsibility" to review the agency's decision).
>
>         Therefore, to justify summary judgment, an agency affidavit invoking Exemption
> 1 must provide "detailed and specific" information demonstrating both why the material
> has been kept secret and why such secrecy is allowed by the terms of an existing
> executive order.  *Campbell*, 164 F.3d at 30; *King*, 830 F.2d at 217.  If the declarations
> provide the requisite specificity, however, and are neither contradicted by other record
> evidence nor contaminated by indications of bad faith, the reviewing court should not
> ordinarily second-guess the agency's judgment.  *Miller v. Casey*, 730 F.2d 773, 776 (D.C.
> Cir. 1984) ([stating that courts] must "accord substantial weight to an agency's affidavit
> concerning the details of the classified status of the disputed record[]").  Instead, the court
> must recognize that the executive branch departments responsible for national security
> and national defense have unique insights and special expertise concerning the kind of
> disclosures that may be harmful.  *See Krikorian v. Dep't of State*, 984 F.2d 461, 464
> (D.C. Cir. 1993); *Salisbury v. United States*, 690 F.2d 966, 970 (D.C. Cir. 1982); *Military*

8

> *Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). In other words, while a court
> is ultimately to make its own decision, that decision must take seriously the government's
> predictions about the security implications of releasing particular information to the
> public, at least where those predictions are sufficiently detailed and do not bear any
> indicia of unreliability.

*American Civil Liberties Union v. FBI*, 429 F. Supp. 2d 179, 187–88 (D.D.C. 2006).

## D.    Exemption 3

Exemption 3 of FOIA covers records that are "specifically exempted from disclosure by

statute . . . , provided that such statute" either "(A) [requires withholding] in such a manner as to

leave no discretion on the issue," or "(B) establishes particular criteria for withholding or refers

to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3); *see also Senate of Puerto*

*Rico v. U.S. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987). To justify withholding

information pursuant to this exemption, the withholding agency "must point to an appropriate

nondisclosure statute" and must also "demonstrate that the withheld materials are covered by that

particular statute." *People for the Am. Way Found. v. NSA*, 462 F. Supp. 2d 21, 28 (D.D.C.

2006) (citing *CIA v. Sims*, 471 U.S. 159, 167 (1985)); *see also Ass'n of Retired R.R. Workers v.*

*U.S. R.R. Ret. Bd.*, 830 F.2d 331, 334–38 (D.C. Cir. 1987) (discussing test to be applied pursuant

to Exemption 3 and requiring reviewing courts to determine whether "the information sought

after falls within the boundaries of the non-disclosure statute"). This exemption "differs from

other FOIA exemptions in that its applicability depends less on the detailed factual contents of

specific documents; the sole issue for decision is the existence of a relevant statute and the

inclusion of withheld material within the statute's coverage." *Fitzgibbon v. CIA*, 911 F.2d 755,

761–62 (D.C. Cir. 1990) (quoting *Ass'n of Retired R.R. Workers*, 830 F.2d at 336); *Krikorian*,

984 F.2d at 465–66 (courts "do not closely scrutinize" Exemption 3 claims but should

nonetheless assess "whether the document falls within [the] statute" relied upon by the agency).

Thus an agency may justify its withholdings under this exemption in general terms, without

necessarily proceeding on a document-by-document basis, so long as the justification sufficiently

demonstrates that the material withheld is exempt.  The court must give a measure of deference

to agency affidavits in this regard.  *Fitzgibbon*, 911 F.2d at 762.  These differences

notwithstanding, a reviewing court must still assure itself that the material withheld is actually

exempted by the claimed statute, *Am. Way Found.*, 462 F. Supp. 2d at 28; *Krikorian*, 984 F.2d at

465–66, and that the exempt material cannot be segregated from non-exempt material appearing

in the same records, *Assassination Archives and Research Ctr. v. CIA*, 334 F.3d 55, 57–58 & n.3

(D.C. Cir. 2003) (noting applicability of segregability analysis in Exemption 3 context); *Schiller*,

964 F.2d at 1209 (stating that "[t]he 'segregability' requirement applies to all [§ 552] documents

and all exemptions" in the Act).

　　　　Here, DOJ contends that the withheld documents are protected from disclosure by various

statutes, two in particular:  First, § 1011 of the Intelligence Reform and Terrorism Prevention Act

of 2004, Pub. L. No. 108-458, 118 Stat. 3638 (Dec. 17, 2004), codified at 50 U.S.C.

§ 403-1(i)(1), requires the Director of National Intelligence to "protect intelligence sources and

methods from unauthorized disclosure."  This statute, DOJ argues, falls within the exemption.

*See Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982) (discussing predecessor statute

applicable to the CIA, which provided that "the Director of Central Intelligence shall be

responsible for protecting intelligence sources and methods from unauthorized disclosure");

*Fitzgibbon*, 911 F.2d at 761 ("There is thus no doubt that [the predecessor CIA statute] is a

proper exemption statute under exemption 3.").

Second, § 6 of the National Security Agency Act of 1959, Pub. L. No. 86-36, § 6, 73 Stat.

63, 64, codified at 50 U.S.C. § 402 note, provides:

> [N]othing in this Act or any other law . . . shall be construed to require the disclosure of the organization or any function of the National Security Agency, of any information with respect to the activities thereof, or of the names, titles, salaries, or number of persons employed by such agency.

*Ibid.*  This statute qualifies for FOIA protection pursuant to Exemption 3.  *See Founding Church*

*of Scientology, Inc. v. NSA*, 610 F.2d 824, 828 (D.C. Cir. 1979); *Hayden v. NSA*, 608 F.2d 1381,

1389 (D.C. Cir. 1979).

**E.       Exemption 5**

As previously noted, Exemption 5 protects "inter-agency or intra-agency memorandums

or letters which would not be available by law to a party other than an agency in litigation with

the agency."  5 U.S.C. § 552(b)(5).  The protections of this exemption encompass various

privileges, such as the so-called "deliberative process" privilege and the attorney-client privilege.

Again, this court provided a concise summary of this exemption in *ACLU v. FBI*:

> This provision has long been interpreted to include a deliberative process privilege . . . .
> [The privilege] shields from disclosure records the government demonstrates to be both
> "'predecisional'" — that is, "generated before the adoption of an agency policy" — and
> "'deliberative,'" — that is, "reflect[ive][of] the give-and-take of the consultative
> process." [*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir.
> 1980).]  "The exemption thus covers recommendations, draft documents, proposals,
> suggestions, and other subjective documents which reflect the personal opinions of the
> writer rather than the policy of the agency." [*Ibid.*]  "Factual material is not protected
> under the deliberative process privilege unless it is 'inextricably intertwined' with the
> deliberative material."  *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 372 (D.C.
> Cir. 2005) (quoting *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (per curiam)).
> "To establish that a document is predecisional, the agency need not point to an agency
> final decision, but merely establish what deliberative process is involved, and the role that
> the documents at issue played in that process."  *Judicial Watch v. Export-Import Bank*,
> 108 F. Supp. 2d 19, 35 (D.D.C. 2000).  The exemption also covers material that would
> fall within the attorney-client privilege.  *See Nat'l Labor Relations Bd. v. Sears, Roebuck*

&amp; *Co.*, 421 U.S. 132, 149, 95 S. Ct. 1504, 44 L. Ed. 2d 29 (1975); *see also Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184, 95 S. Ct. 1491, 44 L. Ed. 2d 57 (1975).

*ACLU v. FBI*, 429 F. Supp. 2d at 190. The agency invoking Exemption 5 must "'establish[ ] its right to withhold evidence from the public . . . . [C]onclusory assertions of privilege will not suffice to carry" the agency's burden. *Senate of Puerto Rico*, 823 F.2d at 585 (quoting *Coastal States*, 617 F.2d at 861).

    Even where material is predecisional or protected by the attorney-client privilege when it is created, it may lose the protection of the privilege if that material "is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *Coastal States*, 617 F.2d at 866; *see also Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 360 (2d Cir. 2005); *Falcone v. IRS*, 479 F. Supp. 985, 990 (E.D. Mich. 1979) (stating that adopted documents are not protected by the attorney-client privilege, and noting that "broad attorney-client privilege would permit legal opinions, recognized as authoritative interpretations within the agency, to be hidden from the public. Further, it is clear that the purpose of the privilege is not to protect communications which are statements of policy and interpretations adopted by the agency."). Thus, "an agency will not be permitted to develop a body of 'secret law,' used by it in the discharge of its regulatory duties and in its dealings with the public, but hidden behind a veil of privilege, because it is not designated as 'formal,' 'binding,' or 'final.'" *Coastal States*, 617 F.2d at 867; *see also Taxation With Representation*

*Fund v. IRS*, 646 F.2d 666, 677 (D.C. Cir. 1981) (Exemption 5 does not "protect communications that implement an established policy of an agency").[6]

### III.  ANALYSIS

DOJ seeks summary judgment, contending that its withholdings (and the explanations offered for those withholdings) are proper and that most of the information requested is classified.  EPIC contends that DOJ's justifications for withholding are either improper or insufficiently justified and requests that the court order *in camera* review of the withheld documents to verify that DOJ has appropriately withheld the information in question.  The court will address the withholdings on a department-by-department basis.  In assessing a given department's withholdings, the court's analysis will roughly track the declaration(s) filed by the department's representative(s).[7]

### A.    OLC

OLC has divided its withheld documents into six categories: (1) records related to the TSP reauthorization process; (2) Category "B," which is described only in the classified submissions; (3) records related to targets of TSP; (4) Category "D," another classified category;

---

[6] The privilege is not waived, however, where an agency has adopted only the *conclusions* of a particular document.  "Mere reliance on a document's conclusions does not necessarily involve reliance on a document's analysis;  both will ordinarily be needed before a court may properly find adoption or incorporation by reference."  *La Raza*, 411 F.3d at 358; *see also Afshar v. Dep't of State*, 702 F.2d 1125, 1143 n.22 (D.C. Cir. 1983) (noting that "[i]f the agency merely carried out the recommended decision without explaining its decision in writing, we could not be sure that the memoranda accurately reflected the decisionmaker's thinking").

[7] Throughout this opinion, the court uses the term "department" generically to refer both to divisions of DOJ and to executive agencies (i.e., NSA).

(5) records relating to OLC legal opinions; and (6) briefing materials and talking points.  *See generally* Bradbury Decl.

### 1.    Records Related To The TSP Reauthorization Process

Prior to and as of September 2006, TSP expired approximately every forty-five days unless it was then reauthorized by the President.  This reauthorization process involved consultation with the Attorney General and officials at OLC, and OLC has withheld documents relating to its involvement in that process.  Within this category of records, OLC has identified two subcategories: (1) drafts and notes of OLC staff, and (2) documents directly related to the reauthorization.  As to the former, EPIC does not challenge the withholding of drafts, and the "notes" identified in the Bradbury declaration and DOJ's/OLC's *Vaughn* index have been withheld appropriately pursuant to Exemption 5.  The court is satisfied that these "notes" and drafts are protected by the attorney-client and the deliberative process privileges.  Summary judgment is warranted, therefore, regarding the following records: OLC 34, 67, 74, 7, 93 and 101; ODAG 10, 17, 18, 19, 48, and 65; and OIPR 141.

The court declines to grant summary judgment, however, regarding the document identified as FBI 7.  The Bradbury Declaration explains that this document "contain[s] classified information regarding the terms of the President's authorization of the TSP, which, if disclosed would compromise the effectiveness of the Program to the detriment of national security." Bradbury Decl. ¶ 32.  While the court does not doubt that this statement is accurate, it does not substantiate the determination to withhold the document in full.  Specifically, OLC's explanation fails to justify the department's determination that the information therein cannot be segregated from nonexempt information.  *See Schiller*, 964 F.2d at 1209; *ACLU*, 429 F. Supp. 2d at 187–88.

OLC justifies its withholding of "documents directly related" to TSP reauthorization in its classified submissions.  As with FBI 7, while the records in this category undoubtedly contain classified information, the court cannot assess whether the documents have, in their entirety, been correctly deemed classified.[8]  Nor is the court satisfied with OLC's segregability determination, which is too vague and general to be useful for the court's purposes.  The court therefore will require further submissions regarding these documents.

### 2.    Categories B And D

The records belonging to categories B and D have been withheld justifiably for the reasons articulated in the classified portions of the Bradbury declaration.  The court grants summary judgment regarding these records.  In addition, OLC need not reveal the number of pages of documents belonging to these categories.[9]

### 3.    Records Related To Targets Of TSP

A fourth category of records — those related to targets of TSP  — may have been withheld properly.  These records involve two types of documents: (1) documents related to the criteria used for targeting and the appropriateness of targeting certain groups of individuals under TSP; and (2) documents containing reporting with respect to the intelligence successes achieved through the use of the TSP.  The information specified above is exempt under Exemption 1

---

[8] Here, as elsewhere in this memorandum, sensitivity to maintaining the secrecy of classified matters and information requires the court to limit the breadth and depth of its discussion.

[9] This grant of summary judgment comes with one caveat.  In the further submissions which DOJ shall provide in this matter, DOJ also is ordered to provide a satisfactory explanation why the headings setting forth the general descriptions (i.e., the titles) of categories B and D have been redacted in the unclassified version of the Bradbury Declaration.

and/or 3, as is the number of pages of documents falling within this category. In addition, many, if not all, documents in this category may be protected by the deliberative process privilege. *See* Bradbury Decl. ¶ 53. The court is not satisfied, however, with OLC's explanation why any of these records do not contain information that is reasonably segregable from the exempt information therein. Indeed, because the language used by OLC is both vague and expansive, the court is not in a position to determine segregability at all, for the simple reason that the court has no way of knowing what any of the records in this category actually are. Nor, therefore, is the court empowered to determine whether the records are protected by the deliberative process privilege. All the court can surmise is the nature of a *portion* of what these records *contain*, and that is simply not sufficient for purposes of summary judgment. *See Schiller*, 964 F.2d at 1209 (stating that "an agency cannot justify withholding an entire document simply by showing that it contains some exempt material"). OLC is required to further identify the individual records in question and to justify, in a far more document-specific fashion, its withholding of these records.

### 4. Records Related To OLC Legal Opinions

For similar reasons, OLC's justifications for withholding various records related to OLC legal opinions are insufficient. OLC has divided this category into three subcategories: (1) final OLC memoranda, (2) drafts, notes, and comments by OLC staff, and (3) e-mail and fax correspondence to and from OLC. DOJ relies predominantly on Exemption 5 to justify its withholding of these records. Upon review of these justifications, the court concludes that the latter two categories are either uncontested or exempt. OLC has sufficiently identified the predecisional and deliberative aspects of these records.

16

As to the "final" memoranda, however, OLC's withholding justifications are inadequate. First, as with other records at issue in this case, OLC's submissions do not even sufficiently identify the universe of documents within this category, apart from noting that they are "final" memoranda related to TSP. And while it is appears likely that many of these documents are protected under exemption 5 (because they are privileged as deliberative or as attorney-client communications), the court is powerless to reach that conclusion. Though in his declaration, Bradbury says in passing that all these memoranda are "predecisional," the court has no way to assess that claim apart from its naked assertion. *Coastal States*, 617 F.2d at 861 ("conclusory assertions of privilege will not suffice to carry" the agency's burden). Nor is the court able to assess whether these documents may have been adopted after-the-fact as expressing the government's position on the issues they address. *See id.* at 867. Moreover, the conclusory nature of OLC's segregability determination prevents the court from conducting a meaningful review of the withholdings in that regard. *See Schiller*, 964 F.2d at 1209; *ACLU*, 429 F. Supp. 2d at 187–88. While the court is certainly sensitive to the government's need to protect classified information and its deliberative processes, essentially declaring "because we say so" is an inadequate method for invoking Exemption 5.[10]

The court also notes that it sees no reason whatsoever to sanction OLC's withholding of the numbers of documents and pages falling within this category. The notion that the threat that lawyers at OLC will be inhibited in the free exchange of recommendations, advice and analysis if

---

[10] OLC's invocation of Exemptions 1 and 3 fares no better. Again, the court lacks the information necessary to conduct even the most deferential review of the documents in question and their connection to classified information. *See Schiller*, 964 F.2d at 1209; *ACLU*, 429 F. Supp. 2d at 187–88.

they knew that the number of pages they use to express themselves could be disclosed to the public is implausible, and DOJ's assertion that revealing the volume of final memoranda in OLC's possession related to TSP and similar activities will somehow reveal the actual scope and/or the workings of the government's classified surveillance activities has no foundation in the record.  The court is open to being persuaded in this regard, but the current submissions are insufficient.

### 5.    Briefing Materials And Talking Points

OLC has also withheld, pursuant to Exemption 5, records it identifies as "briefing materials" and "talking points" relevant to plaintiffs' requests.  Here, while the court is in a slightly better position to assess OLC's claims that these documents are predecisional, it still lacks the information necessary to determine whether these materials have been relied upon or adopted as official positions after their preparation.  Indeed, the likelihood of such adoption is particularly high in the case of "talking points," and the distinction between such records and "briefing materials" is, at best, slim.[11]

### 6.    OLC 95, 153–99

Finally, OLC has withheld documents designated in its *Vaughn* index as OLC 95 and OLC 153–99.  The court cannot find reference to these documents anywhere in DOJ's

---

[11] The court grants summary judgment regarding the withholding of OLC 117/FBI 18, a letter written by Senator J.D. Rockefeller seeking information regarding operational details of TSP.  Plaintiffs do not appear to object to the withholding of this document, and it is exempt, in any event.

submissions outside of the index itself and will therefore require further detailed explanation regarding them.[12]

**B.     ODAG**

Apparently acting on behalf of OAG, ODAG has withheld five categories of documents: (1) ODAG 36, (2) ODAG 59, and (3) ODAG 64, which constitute classified filings, drafts of filings, and internal deliberative exchanges and attorney notes considering such filings made in federal courts when criminal defendants have sought information regarding whether they are or were targets of NSA surveillance; (4) ODAG 39, which is a draft document for which summary judgment is appropriate; and (5) ODAG 37, a memorandum described in classified portions of the Declaration of J. Patrick Rowan.  Def.'s Ex. G ¶¶ 24–26.

As to ODAG 36, 59, and 64, the court again finds itself in the position of being certain that some documents and portions of documents within a category of documents are exempt from disclosure but also lacking sufficient information to determine what the universe of documents within that category actually is, much less which portions of the documents are exempt and which are not.  ODAG informs the court that some documents within these three categories are classified filings in cases wherein criminal defendants have requested information regarding NSA surveillance of their activities.  Because these documents are justifiably classified, Rowan Decl. ¶ 17, they are exempt.  But these filings are not identified separately from the other documents in the categories labeled ODAG 36, 59, and 64.  Nor is the court empowered to

_____

[12] It is possible that the error in this regard is the court's.  If that is the case, DOJ may simply refer the court to the relevant sections of its initial submissions.

determine which documents within these categories are notes, drafts, and the like protected by Exemption 5.

In his declaration, Rowan states that "[e]ach of the documents in these categories of records was *created in response* to a request from a particular defendant seeking information as to whether he was the subject of surveillance under the TSP." *Ibid.* (emphasis added). This statement does not inform the court what each document in the category *is*, but only that each document is related to a request from a criminal defendant. It stands to reason that the vast majority, if not all, of the relevant documents are either (a) exempt classified filings or (b) deliberative drafts and exchanges regarding these filings, which are both classified and protected by Exemption 5. But the court cannot *conclude* that this is the case without further clarification from ODAG. *See id.* ¶ 21 (stating that "*to the extent* these documents are drafts or inter- or intra-agency deliberative exchanges . . . they cannot be disclosed" (emphasis added)), ¶ 22 (stating that "*many of the responsive documents* contain information that must be withheld to prevent an unwarranted invasion of personal privacy" (emphasis added)), ¶ 23 (stating that "[*t*]*o the extent* the documents identify particular law enforcement agents or others . . . investigating . . . terrorism," and "to the extent that information of this type appears in the responsive documents it is also withheld under FOIA Exemption Seven" (emphasis added)). The court will deny DOJ's motion for summary judgment in this regard and require the submission of a complete, document-by-document *Vaughn* index from ODAG. *See Schiller*, 964 F.2d at 1209; *ACLU v. FBI*, 429 F. Supp. 2d at 187–88. The court also will require further clarification regarding ODAG 37, for which the court likewise lacks a basis for upholding ODAG's exemption claims.

C.    OIPR

OIPR has withheld a variety of records, many of which are only described in classified

sections of a declaration from James A. Baker, Counsel for OIPR.  *See* Def.'s Ex. C.  For the

reasons set forth therein, the court grants summary judgment regarding the documents identified

in paragraphs 24–32 and as to OIPR 7.  The court also grants summary judgment as to the

documents identified in paragraphs 22 and 34, all of which are drafts and are not contested by

EPIC.[13]

The court denies summary judgment as to OIPR 3, 26, 39, 84, and 96.  The court (again

without denying the possibility that the court is in error) cannot find reference to these documents

anywhere in DOJ's submissions outside of the index itself and will therefore require further

detailed explanation regarding them.  Similarly, the court will require OIPR to advise the court

regarding the status of its ongoing consultations regarding OIPR 4 and 64.  *See id.* ¶ 17 n.2.

D.    FBI

FBI has withheld an unspecified number of documents which fall within a series of

categories identified in the classified declaration of David M. Hardy, Section Chief of the

Record/Information Dissemination Section of FBI's Records Management Division.  The

justifications for withholding these documents are wholly inadequate.  First, FBI has failed to

produce a *Vaughn* index.  Second, though FBI has informed the court that certain categories of

documents have been withheld, FBI has failed to materially inform the court as to what the

---

[13] One document, OIPR 73, is described as a draft in the Baker declaration but is not
listed as a draft in the *Vaughn* index (there, it is described as "talking points").  Clarification
from defendants is warranted and the court denies summary judgment as to this document (the
classified discussion in the Baker Declaration notwithstanding).

documents in these categories are, how many documents are at issue, and which portions of documents within these categories are exempt and which are not.  Instead, FBI relies on vague, broad, wholesale claims of exempt status that fail to assist the court in assessing FBI's withholding determinations.  *See Schiller*, 964 F.2d at 1209; *ACLU*, 429 F. Supp. 2d at 187–88. The court is willing to defer, for example, to reasonably justified claims that information in the documents at issue is classified and/or protected from disclosure by Exemption 3, but FBI has not informed the court what, precisely, the nature of the withheld information is and what the documents are in which that information appears.  Lacking such information, the court cannot conduct even the most deferential review.  *See ACLU*, 429 F. Supp. 2d at 187–88; *Am. Way Found.*, 462 F. Supp. 2d at 28; *Krikorian*, 984 F.2d at 465–66.  Similar information gaps frustrate the court's review of FBI's determinations that other documents are exempt pursuant to Exemption 5.  And the failure to provide meaningful representations regarding segregability as to documents withheld pursuant to Exemptions 2, 6, 7(A), 7(C), 7(d) and 7(E) — for which redaction, rather than withholding, is typically the appropriate approach — is particularly glaring. The court will require DOJ to submit a detailed *Vaughn* index on FBI's behalf and further justify FBI's withholding and segregability determinations as to the vast majority of responsive documents in its custody.[14]

**E.    NSA**

Unsurprisingly, the declarations submitted by officials from NSA fail to identify at any level the documents withheld.  Instead, the declarations articulate NSA's view that in every

---

[14] Summary judgment is warranted, however, as to the documents specifically identified in paragraphs 55–57, 111, and 148 of the Hardy Declaration.

instance where the information requested by plaintiffs (and records containing that information) involves NSA equities, that information is exempt from disclosure. The court concurs with these determinations as to (1) information concerning operational details of TSP and (2) NSA TSP-related policies, procedures, checklists, and audits, but will deny summary judgment regarding the legal memoranda, opinions and reviews pertaining to TSP discussed in paragraph 29 of the declaration filed by Joseph B., Deputy Chief of Staff for Operations and Support for the Signals Intelligence Directorate of NSA. As with similar documents withheld by OLC, the NSA declarations leave the court with no way to assess the appropriateness of the withholding decision as to records within this category. In particular, the court cannot adequately assess whether the documents are protected by the claimed statutes — that is, "that the withheld material satisfies the criteria for exemption," *Aftergood v. CIA*, 355 F. Supp. 2d 557, 561 (D.D.C. 2005); *Krikorian*, 984 F.2d at 465–66 — or whether the NSA's segregability determination is supported, *see Schiller*, 964 F.2d at 1209; *ACLU v. FBI*, 429 F. Supp. 2d at 187–88; *Assassination Archives*, 334 F.3d at 57–58 & n.3 (addressing segregability in Exemption 3 context). Accordingly, the court will require further submissions from NSA regarding these documents.

### III.  CONCLUSION

For the foregoing reasons, summary judgment is warranted regarding some of the documents withheld by the government.[15]  As to the remainder, the government must submit to

---

[15] As DOJ's submissions make apparent, there is significant overlap among the various documents at issue in this litigation. It may be the case that the court has granted summary judgment as to a particular document and, inadvertently, has also denied summary judgment as to the same document elsewhere in this memorandum. If that is the case, DOJ shall inform the court of that fact in its further declarations.

the court a detailed, document-by-document *Vaughn* index regarding these documents, along with further, significantly more-detailed declarations justifying the various departments' withholding decisions.  Accordingly, and as set forth herein, it is this 5th day of September, 2007, hereby

       **ORDERED** that DOJ's motion for summary judgment [#29] is **GRANTED** in part, **DENIED** in part, and **HELD IN ABEYANCE** in part; and it is further

       **ORDERED** that EPIC's motion for *in camera* review of the disputed records [#34] is **DENIED** without prejudice; and it is further

       **ORDERED** that on or before October 12, 2007, DOJ shall file a second motion for summary judgment, with a document index and declarations, as specified in *Vaughn v. Rosen*, 484 F.2d 820, further stating its justification for the withholding of all remaining records responsive to plaintiffs' FOIA requests.[16]  Thereafter, briefing shall proceed as follows:

    Plaintiffs' opposition/second motion for *in camera* review  October 26, 2007

    Defendant's opposition/reply                   November 9, 2007

    Plaintiffs' reply                             November 16, 2007

    **SO ORDERED**.

                                    Henry H. Kennedy, Jr.
                                    United States District Judge

---

[16] If these submissions are unsatisfactory, the court will order *in camera* review.