**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) ) | |
| | ) | Civil Action No. 06-0096 (HHK) |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| DEPARTMENT OF JUSTICE, | ) ) | |
| Defendant. | ) ) | |
| ——————————————— | ) | |
| | ) | |
| AMERICAN CIVIL LIBERTIES UNION, et al., | ) ) | |
| | ) | Civil Action No. 06-00214 (HHK) |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| DEPARTMENT OF JUSTICE, | ) ) | |
| | ) | **CONSOLIDATED CASES** |
| Defendant. | ) ) | |
| ——————————————— | ) | |

**DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and the Court's Order of

September 5, 2007, the United States Department of Justice hereby respectfully moves this Court

for judgment as a matter of law.  The reasons for this motion are set forth in defendant's

Memorandum of Points and Authorities in Support of Defendant's Renewed Motion for

Summary Judgment filed herewith.

Dated: October 18, 2007.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General, Civil Division

JEFFREY A. TAYLOR
United States Attorney

JOSEPH H. HUNT
Director, Federal Programs Branch

JOHN R. TYLER
Senior Trial Counsel
Federal Programs Branch

_____/s/ Rupa Bhattacharyya_____
RUPA BHATTACHARYYA (VA# 38877)
Senior Trial Counsel
Federal Programs Branch, Civil Division
United States Department of Justice
P.O. Box 883, 20 Massachusetts Ave., N.W.
Washington, D.C.  20044
Tel: (202) 514-3146
Fax: (202) 318-7593
Email: rupa.bhattacharyya@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) | |
| | ) | |
| | ) | Civil Action No. 06-0096 (HHK) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| AMERICAN CIVIL LIBERTIES UNION, et al., | ) | |
| | ) | Civil Action No. 06-00214 (HHK) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF JUSTICE, | ) | |
| | ) | **CONSOLIDATED CASES** |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

Plaintiffs in this case, the Electronic Privacy Information Center ("EPIC"), the American Civil Liberties Union ("ACLU"), and the National Security Archive Fund ("NSAF"), challenge the decision of various components of the United States Department of Justice ("DOJ" or the "Department") to withhold documents responsive to their separate requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiffs' FOIA requests, all made in January 2006, sought documents from DOJ relating to the highly classified Terrorist Surveillance Program, an intelligence collection program authorized by the President of the United States after the terrorist attacks of September 11, 2001, in order to detect and prevent another catastrophic attack on the United States.

On September 15, 2006, DOJ filed a Motion for Summary Judgment in this case which comprehensively set forth the bases for the Department's determinations to withhold records under FOIA. Docket No. 29. Plaintiffs filed an opposition to that Motion and a Cross-Motion for In Camera Review of the withheld records on October 13, 2006. Docket Nos. 33, 34. The Court, in an order entered September 5, 2007, granted in part, denied in part, and held in abeyance in part DOJ's summary judgment motion, and denied plaintiffs' motion for in camera review without prejudice. Docket No. 48. The Court ordered DOJ to file a renewed motion seeking summary judgment as to those documents that remain at issue in this case following plaintiffs' various concessions and the Court's rulings granting DOJ summary judgment as to its determinations to withhold certain documents.

In accordance with the Court's Order of September 5, 2007 (hereinafter "Mem. Op."), DOJ hereby renews its motion for summary judgment as to the documents that remain at issue in this litigation. As the accompanying declarations demonstrate, DOJ has discharged all of its

statutory obligations under FOIA, and is entitled to judgment as a matter of law on plaintiffs' claims.

## BACKGROUND

1.     __The Terrorist Surveillance Program__.

The three FOIA requests at issue in this case involve the Terrorist Surveillance Program ("TSP"), a foreign intelligence collection program authorized by the President following the devastating attacks of September 11, 2001.  Under the TSP, the National Security Agency ("NSA") was authorized to intercept international communications into and out of the United States of persons linked to al Qaeda or an affiliated terrorist organization.  See Declaration of John D. Negroponte, Director of National Intelligence ("DNI Decl.")[1], attached as Ex. D to the Declaration of Steven G. Bradbury, Acting Assistant Attorney General, Office of Legal Counsel ("OLC") ("Bradbury Decl."), filed in support of DOJ's Motion for Summary Judgment ("DOJ MSJ"), Docket No. 29, ¶¶ 16-17; Bradbury Decl. ¶¶ 18-20.

The President publicly acknowledged the existence of the TSP on December 17, 2005. Bradbury Decl. ¶ 20.  As the President has made clear, however, details about the TSP remain highly classified and subject to special access restrictions under the criteria set forth in Executive Order 12958, 60 Fed. Reg. 19825 (Apr. 17, 1995), as amended by Executive Order 13292, 68 Fed. Reg. 15315 (Mar. 25, 2003).  Bradbury Decl. ¶ 20.  Unauthorized disclosure of information regarding the TSP can reasonably be expected to cause exceptionally grave damage to the national security of the United States, see generally DNI Decl. ¶¶ 21-35, and, thus, pursuant to the criteria outlined in Executive Order 12958, as amended, information related to the TSP is

---

[1]  In February 2007, Michael J. McConnell replaced Ambassador Negroponte as the Director of National Intelligence.

classified TOP SECRET.  Id. ¶ 20 (citing Executive Order 12958, as amended, §§ 1.4 (c), (d),

(e), and (g)).  Moreover, because information related to the TSP involves or derives from

particularly sensitive intelligence sources and methods, it is subject to the special access and

handling procedures reserved for Sensitive Compartmented Information ("SCI").[2]  Id.

On January 17, 2007, the Attorney General announced that, on January 10, 2007, the

Foreign Intelligence Surveillance Court ("FISC") had issued orders authorizing the United States

Government to collect foreign intelligence by targeting for collection international

communications into or out of the United States where there is probable cause to believe that one

of the communicants is a member of agent or al Qaeda or an affiliated terrorist organization.

See Second Declaration of Steven G. Bradbury, Principal Deputy Assistant Attorney General,

OLC ("Second Bradbury Decl."), attached hereto as Exhibit A, ¶¶ 10 & Ex. B thereto.[3]  On

August 5, 2007, Congress enacted the Protect America Act of 2007, Pub. L. No. 110-55.  See

id. ¶ 11.  As a result, the President has determined not to reauthorize the TSP.  Id.

---

[2]  "Access to Sensitive Compartmented Information ("SCI") requires clearance beyond the 'Top Secret' level.  SCI is classified information that is required to be handled exclusively within formal access control systems established by the Director of [National] Intelligence." Guillot v. Garrett, 970 F.2d 1320, 1322 n. 1 (4th Cir. 1992); see also DNI Decl. ¶¶ 8, 20; Bradbury Decl. ¶ 24.

[3]  The Second Bradbury Declaration is classified in part under the provisions of Executive Order 12958, 60 Fed. Reg. 19825 (Apr. 17, 1995), as amended by Executive Order 13292, 68 Fed. Reg. 15315 (Mar. 25, 2003), and is lodged with the Court for its in camera, ex parte review.  See Defendant's Notice of Lodging of Classified Exhibits, filed contemporaneously herewith.  A redacted version of the Second Bradbury Declaration is attached hereto as Ex. A.

2.    __Statutory Framework and Applicable Exemptions.__[4]

The FOIA's "basic purpose" reflects a "general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989). "Congress recognized, however, that public disclosure is not always in the public interest." Central Intelligence Agency v. Sims, 471 U.S. 159, 167 (1985). Thus, FOIA is designed to achieve a "workable balance between the right of the public to know and the need of the Government to keep information in confidence to the extent necessary without permitting indiscriminate secrecy." John Doe, 493 U.S. at 152 (quoting H.R. Rep. No. 1497, 89th Cong., 2 Sess. 6 (1966), reprinted in 1966 U.S.C.C.A.N. 2416, 2423).

To that end, FOIA mandates disclosure of government records unless the requested information falls within one of nine enumerated exceptions, see 5 U.S.C. § 552(b). "A district court only has jurisdiction to compel an agency to disclose improperly withheld agency records," i.e., records that do "not fall within an exemption." Minier v. Central Intelligence Agency, 88 F.3d 796, 803 (9th Cir. 1996) (emphasis by the court). Despite the "liberal congressional purpose" of FOIA, the statutory exemptions must be given "meaningful reach and application." John Doe, 493 U.S. at 152. "Requiring an agency to disclose exempt information is not authorized. . . ." Minier, 88 F.3d at 803 (quoting Spurlock v. Fed. Bureau of Investigation, 69 F.3d 1010, 1016 (9th Cir. 1995))

Three of FOIA's exemptions apply to the documents remaining at issue in this case.[5]

---

[4] The statutory framework and legal principles applicable to FOIA and its exemptions were discussed at length in Defendant's opening papers, and that discussion is not repeated herein. Certain principles specifically applicable at this stage of the proceedings are summarized here.

[5] Some of the documents are contain information that is properly withheld pursuant to Exemptions 6 and 7(C) which protect information relating to personal privacy. Withholding of

*Exemption One.*  FOIA specifically exempts from disclosure records that are:  (1) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy, and (2) are in fact properly classified pursuant to Executive Order.  See 5 U.S.C. § 552 (b)(1).  Exemption One thus "establishes a specific exemption for defense and foreign policy secrets, and delegates to the President the power to establish the scope of that exemption by executive order."  Military Audit Project v. Casey, 656 F.2d 724, 737 (D.C. Cir. 1981).  To carry its burden of demonstrating the propriety of its decisions supporting its Exemption One position, an agency must demonstrate a "logical connection between the information and the claimed exemption . . . ."  ACLU v. Dept. of Justice, 265 F. Supp. 2d 20, 29-30 (D.D.C. 1980).  In reviewing Exemption One claims, the Court "is not to conduct a detailed inquiry to decide whether it agrees with the agency's opinions . . . ." Halperin v. Central Intelligence Agency, 629 F.2d 144, 148 (D.C. Cir. 1980); see Weissman v. Central Intelligence Agency, 565 F.2d 692, 697 (D.C. Cir. 1997) (recognizing that "[f]ew judges have the skill or experience to weigh the repercussions of disclosure of intelligence information").  To do so would violate the principle of according substantial weight to the expert opinion of the agency.  See Miller v. Casey, 730 F.2d 773, 776 (D.C. Cir. 1984); Military Audit Project, 656 F.2d at 738.  Instead, the Court must "take seriously the government's predictions about the security implications of releasing particular information to the public . . . ," ACLU, 265 F. Supp. 2d at 28, and "recognize that the executive branch departments responsible for national security and national defense have unique insights and special expertise concerning the kind of disclosures that may be harmful."  Id. at 27 (citing Krikorian v. Dept. of State, 984 F.2d 461, 464

---

this information is not contested, so long as these are not the only bases – and they are not – for withholding documents in full.  See Mem. Op. at 5.

(D.C. Cir. 1993); <u>Salisbury v. United States</u>, 690 F.2d 966, 970 (D.C. Cir. 1982); and <u>Military Audit Project</u>, 656 F.2d at 738).  The issue for the Court is whether "on the whole record, the Agency's judgment objectively survives the test of reasonableness, good faith, specificity and plausibility in the field of foreign intelligence in which [the agency] is expert and has been given by Congress a special role." <u>Gardels v. Central Intelligence Agency</u>, 689 F.2d 1100, 1105 (D.C. Cir. 1982).

***Exemption Three.***  FOIA also protects from disclosure information that Congress has separately determined warrants special protection.  5 U.S.C. § 552(b)(3).  Thus, FOIA "does not apply to matters that are − . . . specifically exempted from disclosure by statute . . . provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." <u>Id.</u>

In examining an Exemption Three claim, a court must determine first whether the claimed statute is a statute of exemption under FOIA, and second whether the withheld material satisfies the criteria of the exemption statute.  <u>See</u> <u>Sims</u>, 471 U.S. at 167; <u>Fitzgibbon v. Central Intelligence Agency</u>, 911 F.2d 755, 761 (D.C. Cir. 1990).  "'Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage.'" <u>Fitzgibbon</u>, 911 F.2d at 761-62 (quoting <u>Assoc. of Retired R.R. Workers</u>, 830 F.2d at 336, and <u>Goland v. Central Intelligence Agency</u>, 607 F.2d 339, 350 (D.C. Cir. 1978)).  Moreover, "[a] specific showing of potential harm to national security . . . is irrelevant to the language of [an Exemption Three statute].  Congress has already, in enacting the statute, decided that disclosure of [the specified information] is potentially

harmful." Hayden v. National Security Agency, 608 F.2d 1381, 1390 (D.C. Cir. 1979). Several

protective statutes encompass the documents sought by plaintiffs, and thus justify the

withholding of documents under FOIA's Exemption Three, including Section 102A(i)(1) of the

Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, 118 Stat. 3638

(Dec. 17, 2004), codified at 50 U.S.C. § 403-1(i)(1); Section 6 of the National Security Agency

Act of 1959, Pub. L. No. 86-36, § 6, 73 Stat. 63, 64, codified at 50 U.S.C. § 402 note; and 18

U.S.C. § 798.

   *Exemption Five.*  FOIA also exempts from disclosure "inter-agency or intra-agency

memorandums or letters which would not be available by law to a party other than agency in

litigation with the agency." 5 U.S.C. § 552(b)(5). Thus, Exemption Five "exempt[s] those

documents . . . normally privileged in the civil discovery context," Schiller v. Nat'l Labor

Relations Bd., 964 F.2d 1205, 1208 (D.C. Cir. 1992) (citations omitted)), including documents

subject to the deliberative process privilege, the attorney client communication privilege, the

attorney-work product doctrine, and the presidential communications privilege.

   •   Documents covered by the *deliberative process privilege* include those "reflecting
       advisory opinions, recommendations and deliberations comprising part of a
       process by which governmental decisions and policies are formulated." Nat'l
       Labor Relations Bd. v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975) (citation
       omitted). Documents fall within the deliberative process privilege if they are
       "inter-agency or intra-agency," i.e., if the source of the document is a Government
       agency, Dept. of Interior v. Klamath, 532 U.S. 1, 8 (2001); and if it both
       "predecisional" and "deliberative." In re Sealed Case, 121 F.3d 729, 737 (D.C.
       Cir. 1997) (citations omitted). "To establish that a document is predecisional, the
       agency need not point to an agency final decision, but merely establish what
       deliberative process is involved, and the role that the documents at issue played in
       that process." Judicial Watch v. Export-Import Bank, 108 F. Supp. 2d 19, 35
       (D.D.C. 2000) (citation omitted). A record is "deliberative" when "it reflects the
       give-and-take of the consultative process." Wolfe v. Department of Health and
       Human Servs., 839 F.2d 768, 774 (D.C. Cir. 1988) (citation and internal quotation
       marks omitted) (en banc).

- The *attorney-client privilege* applies when a client communicates with attorneys with the intent that the communication remain confidential for the purposes of securing legal opinions, legal services, or assistance in legal proceedings.  In re Lindsey, 158 F.3d 1263, 1270 (D.C. Cir. 1998) (citing In re Sealed Case, 737 F.2d 94, 98-99 (D.C. Cir. 1984)).  The privilege also encompasses any opinions given by an attorney to his client based upon facts communicated by the client.  See, e.g., Mead Data Central, Inc. v. U.S. Dep't of the Air Force, 566 F.2d 242, 254 n.25 (D.C. Cir. 1977).

- The *attorney-work product doctrine* prevents the disclosure of  "documents prepared in anticipation of foreseeable litigation, even if no specific claim is contemplated."  Schiller, 964 F.2d at 1208.  It applies so long as "some articulable claim, likely to lead to litigation" has arisen.  Coastal States Gas Corp. v. Dept. of Energy, 617 F.2d 854, 865 (D.C. Cir. 1980).  The doctrine, thus, protects information generated by legal counsel where "the document can fairly be said to have been prepared or obtained because of the prospect of litigation."  In re Sealed Case, 146 F.3d 881, 884 (D.C. Cir. 1998).

- The *presidential communications privilege* protects "communications 'in performance of [a President's] responsibilities,' 'of his office,' and made 'in the process of shaping policies and making decisions.'' ' Nixon v. Adm'r of Gen. Servs., 433 U.S. 425, 449 (1977) ("Nixon II" ). The privilege is  "closely affiliated" with the deliberative process privilege, but, unlike that privilege, it "applies to documents in their entirety, and covers final and post-decisional materials as well as pre-deliberative ones."  In re Sealed Case, 121 F.3d at 745; see also id. at 744.

**3.    The Court's September 5, 2007 Order.**

In its September 5, 2007, Order, the Court began by narrowing the scope of the present dispute, eliminating those categories of documents where plaintiffs had either withdrawn or disclaimed objections.  See Mem. Op. at 5.  Thus, the only documents that remain at issue are "final (i.e., nondraft) nonduplicative records" withheld by the various components of the Department, other than the Criminal Division.  Id.  More specifically, the Court sought additional submissions or clarification from several Department components, including from the Office of Deputy Attorney General ("ODAG"); the Office of Legal Counsel ("OLC"); the Office of Intelligence Policy and Review ("OIPR"); the Federal Bureau of Investigation ("FBI"), and from the National Security Agency ("NSA"), to which several of these DOJ components referred

documents for direct processing.

As to each of these components, however, the Court granted summary judgment to the Department on determinations to withhold the majority of the documents identified by defendant in its earlier submissions as properly withheld.  As to ODAG, the Court granted summary judgment on the determination to withhold one document identified in the Declaration of J Patrick Rowan, Exhibit G to defendant's opening motion, but sought further clarification as to four.  As to OLC, the Court granted summary judgment on the determinations to withhold all of the documents withheld in Categories B and D and with respect to certain of the documents withheld in Categories A, C, E, F, and G, identified in the Declaration of Steven G. Bradbury, Exhibit A to defendant's motion, but required clarification as to certain others.  As to OIPR, the Court granted summary judgment as to virtually all the documents identified in the Declaration of James A. Baker, Exhibit C to defendant's motion, seeking clarification as to only six.[6]  As to the FBI, the Court granted summary judgment as to the determination to withhold certain documents for the reasons described in the Declaration of David M. Hardy, Exhibit J to defendant's Motion, but required further submission as to others.  And, as to the NSA, the Court granted summary judgment as to NSA's determination to withhold documents in two categories identified in the declarations filed in support of NSA, Exhibits M & N to defendant's motion, but sought further submissions requiring documents withheld in a third.

---

[6]  The Court also required OIPR to advise the Court of the status of ongoing consulations regarding two documents, OIPR 4 and OIPR 64.  These documents were released by OIPR in full by letter dated June 20, 2007.

**ARGUMENT**

**DOJ IS ENTITLED TO SUMMARY JUDGMENT AS TO
THE DOCUMENTS REMAINING AT ISSUE**

DOJ files this motion to seek summary judgment as to its determinations to withhold

documents that remain at issue in this case processed by the Office of the Deputy Attorney

General ("ODAG"); the Office of Legal Counsel ("OLC"); or withheld by the National Security

Agency ("NSA") where those documents were referred to NSA by other components of the

Department. DOJ is also seeking summary judgment on behalf of the Office of Intelligence

Policy and Review ("OIPR") (now a part of the Department's National Security Division) after

clarifying the few remaining issues that prevented summary judgment for that Office on

defendant's earlier motion.[7]

**I.      ODAG IS ENTITLED TO SUMMARY JUDGMENT.**

In assessing ODAG's justifications for its withholdings in its September 5 opinion, the

Court upheld ODAG's determination to withhold a draft document, ODAG 39, but sought

further clarification regarding the remaining four records or categories of records withheld by

ODAG. As explained in the Second Declaration of J. Patrick Rowan, Deputy Assistant Attorney

General, National Security Division, attached hereto as Exhibit B,[8] these records are properly

---

[7]  Pursuant to an extension of time sought by defendant, and granted by the Court in a
Minute Order issued, the documents withheld by the Federal Bureau of Investigation ("FBI")
which remain at issue in this litigation will the subject of a supplementary submission, to be filed
November 20, 2007, in support of the instant motion.

[8]  The Second Rowan Declaration is classified in part under the provisions of Executive
Order 12958, 60 Fed. Reg. 19825 (Apr. 17, 1995), as amended by Executive Order 13292, 68
Fed. Reg. 15315 (Mar. 25, 2003), and is lodged with the Court for its in camera, ex parte review.
See Defendant's Notice of Lodging of Classified Exhibits, filed contemporaneously herewith. A
redacted version of the Second Rowan Declaration is attached hereto as Ex. B.

withheld under FOIA Exemptions One, Three, and Five.[9]

Three of the records or categories of records described by Mr. Rowan – ODAG 36, ODAG 59, and ODAG 64 – are comprised of records relating to classified filings made in federal district courts where federal criminal defendants sought information concerning whether they are or were targets of NSA surveillance. As the Court requested, a document-by-document Vaughn index of these records is provided as Exhibit A to Mr. Rowan's Second Declaration. As that index and Mr. Rowan's Second Declaration make clear, all of the documents withheld by ODAG under these three designations were either classified filings made under the Classified Information Protection Act, 18 U.S.C. App. 3, see Second Rowan Decl. ¶ 10,[10] which this Court determined were "justifiably withheld," see Mem. Op. at 19; intra- or inter-agency communications concerning criminal defendant(s)/targets of investigation, which "contain discussion of litigation strategy or of intelligence or investigatory information provided to Department attorneys in the context of their representation of the United States in federal criminal cases," Second Rowan Decl. ¶ 10,[11] which the Court determined were both "classified and protected by Exemption 5," see Mem. Op. at 20; or drafts and related notes of Department attorneys responsible for these federal district court filings, Second Rowan Decl. ¶ 10,[12] the withholding of which plaintiffs do not challenge. See Mem. Op. at 5 (noting that only "final (i.e.,

_____

[9] As Mr. Rowan's declaration makes clear, many of these records are subject to overlapping claims of exemption. This Court need only find any one exemption applicable in order to grant summary judgment to the Department as to the withholding of any particular record. See Fund for Constitutional Gov't v. Nat'l Archives and Records Serv., 656 F.2d 856, 864 n.19 (D.C. Cir. 1981).

[10] These documents are identified as Category Code "A" on the index.

[11] These documents are identified as Category Code "B" on the index

[12] These documents are identified as Category Code "C" on the index.

nondraft) nonduplicative documents" remain at issue).

To the extent these documents contain information that would to tend to confirm or deny whether certain individuals were the subject of classified surveillance activities, that information cannot be disclosed without compromising national security and, thus, is properly classified. See Second Rowan Decl. ¶¶ 11-12 (citing DNI Decl. ¶ 35); see also DOJ MSJ at 31-34. In particular, the CIPA filings are classified for, inter alia, exactly this reason, see Second Rowan Decl. ¶ 13, and many of the other documents contain similar information. id. ¶¶ 11-13; see also id. ¶ 15. The inter-agency communications, draft documents, and attorney notes are also properly withheld because both the deliberative process privilege and the attorney work product doctrine prohibit the disclosure of these documents in their entirety. See Second Rowan Decl. ¶¶ 14; see also DOJ Mem. at 31-34; Judicial Watch, Inc. v. Dept. of Justice, 432 F.3d 366, 371 (D.C. Cir. 2005) ("if a document is fully protected as work product, then segregability is not required").

Exhibit A and Mr. Rowan's Second Declaration demonstrate that the Court was entirely correct in reasoning that "the vast majority, if not all, of the relevant documents are either (a) exempt classified filings or (b) deliberative drafts and exchanges regarding those filings, which are both classified and protected by Exemption Five." Mem. Op. at 20. Indeed, all of the records encompassed by the designations ODAG 36, ODAG 59, and ODAG 64 fall within these two categories and are appropriately withheld for the reasons discussed in Mr. Rowan's original and Second Declaration. As to its determinations to withhold these documents, ODAG is entitled to summary judgment.

The fourth document withheld by ODAG that is still at issue is ODAG 37, a memorandum prepared by Mr. Rowan in his previous capacity as Senior Counsel to the Assistant

Attorney General for the Criminal Division. This memorandum was prepared by Mr. Rowan at the request of the Assistant Attorney General and memorializes the status of ongoing legal analysis. Second Rowan Decl. ¶ 17. For the reasons described in the classified portions of Mr. Rowan's Second Declaration, this memorandum is classified and cannot be released without compromising national security and, thus, is properly withheld under Exemptions One and Three of FOIA. See Second Rowan Decl. ¶¶ 18-19. In addition, as described by Mr. Rowan, this document was prepared in order to provide recommendations and preliminary legal analysis for the benefit of higher level Department officials. See id. ¶ 17; see also ¶¶ 18-19. Because such preliminary legal analysis is fully protected by both the deliberative process privilege and the attorney work product doctrine, ODAG 37 is properly withheld in its entirety under Exemption Five of FOIA.

## II.    OLC IS ENTITLED TO SUMMARY JUDGMENT.

As the Court recognized in its September 5 opinion, OLC has divided its withheld into six categories, and granted summary judgment as to certain withholding within these categories, while denying summary judgment as to others pending further submissions.[13] Mr. Bradbury's Second Declaration specifically identifies the documents as to which the Court has already granted summary judgment,[14] and discusses those documents as to which the Court required

---

[13] Plaintiffs do not challenge documents in a seventh category, i.e., documents that are not agency records as defined by FOIA. See Bradbury Decl. ¶ 77. In the course of preparing the supplemental submissions in support of this renewed motion, OLC determined that one additional document fell within this category, OIPR 138, see Second Bradbury Decl. ¶ 48; OLC has no authority to distribute this document or to dispose of it, and it should not have been processed in response to plaintiffs' FOIA requests. Id.

[14] Exhibit A to the Second Bradbury Declaration is a chart which identifies each document withheld by OLC, whether summary judgment has already been granted as to that document or whether it is the subject of this renewed motion, and, as to the latter documents, whether summary judgment was granted as to OLC's determination to withhold the document in

further submissions.

    A.    OLC Properly Withheld the Remaining Documents at Issue Relating to the
          President's Authorization of the TSP.

          In this category, the Court sought further information concerning 13 documents, three of

which are duplicates referred to OLC by another component.  See Second Bradbury Decl. ¶ 25,

43, 49, 50.  One of these documents, OIPR 138, as described in note 12, supra, is not an agency

record as defined in FOIA.  See id. ¶ 48.  A second document, FBI 7, a memorandum from the

Attorney General to the Director of the Federal Bureau of Investigation, is withheld for the

reasons provided in the classified sections of Mr. Bradbury's Second Declaration.  Id. ¶¶ 51-52.

A third document, ODAG 40, is a set of personal notes of a former OLC attorrney, and is

withheld as both classified and deliberative under FOIA exemptions One, Three and Five.  Id.

¶¶ 44-47.  The remaining documents, OLC 51, OLC 63/FBI 4, OLC 64/FBI 5, OLC 114, OLC

115/ODAG 3, OIPR 139, and OIPR 140, are documents that contain OLC's legal advice in

response to requests for views concerning the President's authorization of the TSP.  As

comprehensively explained by Mr. Bradbury, these memoranda, with the exception of OLC 51,

are classified because they contain information concerning the TSP and other intelligence

activities that cannot be revealed, see Second Bradbury Decl. ¶¶ 34-35, 41, 45, and 47, and

moreover, all of these memoranda are protected by the attorney-client and deliberative process

privileges.  See id. ¶¶ 28, 34, 42, 46.

    B.    OLC Properly Withheld the Records Identified in Category B.

    The Court has granted summary judgment as to all of the documents withheld in this

_____

the context of TSP-related FOIA litigation pending in the United States District Court for the
Southern District of New York, that implicates the withholding of some of the same documents.
See Second Bradbury Decl. ¶ 4 & Exhibit A; See Defendant's Notice of Supplemental Authority
(Docket No. 45), filed July 11, 2007.

category.  Mem. Op. at 15; <u>see</u> Second Bradbury Decl. ¶ 56 (identifying these documents as OLC

35, 36, 37, 75, and 207, and ODAG 12).  The Court has questioned whether the category

description can be publicly disclosed, Mem. Op. at 15 n.9, but as explained in Mr. Bradbury's

Second Declaration, "further information about this category of documents cannot be provided

without disclosing classified information."  Second Bradbury Decl.  ¶ 54; <u>see id.</u> ¶ 55.

>    C.    OLC Properly Withheld the Records that Remain at Issue Relating to
>          <u>Targets of the TSP.</u>

In this category, the Court sought further submissions concerning eleven records or

categories of records, one of which is a duplicate referred by another component.  <u>See</u> Second

Bradbury Decl. ¶¶ 57.   Two of these documents, OLC 107 and OLC 139, are drafts <u>Id.</u> ¶¶ 66, 67,

and the withholding of drafts is not challenged.  Another, OLC 200, is a note prepared by a staff

attorney for the review of a supervisor.  This sort of document is properly withheld under the

deliberative process privilege and its disclosure would harm the effective functioning of

Department attorneys, and, in any event, in this case, the document also contains classified

information.  <u>See id.</u> ¶¶ 70-72.  Two other documents, OLC 145/ODAG 16 and ODAG 15, are

classified intelligence reports provided to the Department in connection with, and for the

preparation of, legal advice; these sorts of reports are properly withheld for the reasons explained

by Mr. Bradbury.  <u>Id.</u> ¶ 69.

Finally, the remaining records or categories of records OLC 76, OLC 144, ODAG 23,

ODAG 24, and OIPR 9, are all records relating to an ongoing interagency discussion concerning

consideration of groups potentially affiliated with al Qaeda for purposes of making targeting

decisions under the TSP.  <u>See</u> Bradbury Decl. ¶ 58-60.  The Court has requested a document-by-

document log of these documents, and one is provided as Exhibit C to Mr. Bradbury's

declaration as to OLC 76 and ODAG 24; the remaining documents are described in the text of

the declaration itself.  <u>See</u> Second Bradbury Decl. ¶¶ 68, 74, 75.  As these descriptions make clear, these documents falls into three overlapping categories:

> interagency communications, much of it preliminary, concerning consideration of groups potentially affiliated with al Qaeda, OILC drafts and notes concerning the same, often identifying questions requiring interagency resolution; and intelligence information and analysis concerning terrorist groups relevant to such consideration.

Second Bradbury Decl. ¶ 60; <u>see</u> <u>also</u> <u>id.</u> Ex. C; <u>id.</u> ¶¶ 68, 74, 75.  For the reasons comprehensively explained by Mr. Bradbury, all of these documents are properly withheld under FOIA.  Moreover, because as Mr. Bradbury describes, this interagency discussion occurred "in the course of the Department's extended efforts to devise an application for the FISC that, if granted, would allow activities authorized by the President under the TSP to be placed under FISC authorization," <u>id.</u> ¶ 59, all of these documents constitute attorney work product and are properly withheld in their entirety.

> D.    OLC Properly Withheld Records or Categories of Records Relating to
>        <u>Matters Before the Foreign Intelligence Surveillance Court.</u>

The Court has granted summary judgment as to all of the documents withheld in this category.  Mem. Op. at 15; <u>see</u> Second Bradbury Decl. ¶ 78 (identifying these documents as OLC 1, 2, 3, 4, 5, 6, 10, 11, 15, 18, 19, 22, 23, 55, 66, 68, 69, 72, 73, 92, 100, 104, 109, 110, 111, 112, 122, 124, 130, 136, and 137; ODAG 7, 26, 28, 30, 33, and 58; and OIPR 25, 27, 71, and 94). The Court has questioned whether the category description can be publicly disclosed, Mem. Op. at 15 n.9; as explained in Mr. Bradbury's Second Declaration, these records consisted of documents associated with the drafting of applications or other pleadings with the FISC,and other correspondence with that Court.  <u>Id.</u> ¶ 77.

E.    OLC Properly Withheld the Records Remaining at Issue Relating to Legal
      Opinions of OLC.

The Court's main concern regarding the documents that remain at issue in this category is

whether any segregable part of these final legal opinions can be released.   Mem. Op. at 17.  As

Mr Bradbury explains, in detailed descriptions he provides of these documents, no such

reasonable segregation can be accomplished because of the substantial intertwining of classified

information and protected attorney client advice and deliberative recommendations contained in

these memoranda.  See Bradbury Decl. ¶¶ 84-89.  Moreover, as Mr. Bradbury explains, OLC

itself has no policy authority, and, although OLC advice often informs decisions on policy, none

of these opinions have been adopted by Government policymakers.  Id. ¶¶ 81-82.  For the reasons

explained by Mr. Bradbury, no portions of these documents may be disclosed with compromising

information falling within FOIA's protections.

F.    OLC Properly Withheld Records Remaining at Issue Relating to Briefing
      Materials and Talking Points.

The Court's main concern with respect to the document remaining at issue in this

category is whether any of these materials have been relied upon or adopted as official positions

after their preparation.  Mem. Op. at 18.  As Mr. Bradbury explains, with four exceptions, all of

the documents withheld in this category were prepared for internal use, and with the same four

exceptions, none were adopted in subsequent public discussions of the TSP.  Second Bradbury

Decl. ¶ 110.  The four exceptions, OLC 84, OLC 116, OLC 201, and OIPR 60, are drafts of

materials that were subsequently publicly released by the Department and to these plaintiffs in

response to their FOIA requests.  See id. ¶¶ 128-29.  Thus, for the reasons explained by Mr.

Bradbury as to why talking points of this nature are generally considered advisory, id. ¶ 110, and

in his specific descriptions of the particular records withheld here, id. ¶¶ 112-14 (OLC 46/ODAG

56), ¶¶ 115-17 (OLC 65/OIPR 137); ¶¶ 119-23 (OLC 80/ODAG 34); ¶¶ 124-127 (OLC 81 & 82),

and ¶¶ 130-135 (OLC 125/ODAG 41, 126/OIPR 13); ¶¶ 136-39 (OLC 134), and ¶ 140 (OLC

202), the remaining documents in this category have been properly withheld.

Mr. Bradbury's further submissions clearly establish that OLC is entitled to summary

judgment as to all of its remaining withholdings.

**III.    OIPR IS ENTITLED TO SUMMARY JUDGMENT.**

In its September 5, 2006, Order, the Court granted summary judgment as to all the

withholding determinations made by OIPR but sought further clarification regarding OIPR 3, 26,

39, 84, and 96. See Mem. Op. at 21. These documents were identified on the chart submitted as

an exhibit to the Declaration of James A. Baker ("Baker Decl."), DOJ MSJ Ex. C, as

"INTENTIONALLY LEFT BLANK." See Baker Decl. Ex. C. These identifiers were either not

assigned to any specific document, or were assigned to a document that was either duplicative of

another document and thus removed from the collection or determined not to be responsive to

plaintiffs' requests. Thus, as with the similar OLC identifiers discussed above, the identifiers

OIPR 3, 26, 39, 84, and 96 were maintained simply to preserve the sequential numbering of other

documents but do not themselves refer to any actual responsive document withheld by OIPR in

this litigation.

The Court also sought further clarification regarding OIPR 73, see Mem. Op. at 21 n.13,

which was identified as an exempt draft in the Declaration of Mr. Baker but identified as "talking

points" in the accompanying chart. The description of this document in the sworn declaration of

Mr. Baker is correct; in fact, the document is a draft of a set of talking points (no final set was

located). Defendant regrets the confusion engendered by the inaccurate description in the chart

filed as an Exhibit to Mr. Baker's declaration, which was intended as a demonstrative exhibit.

OLC 73, accordingly, is properly withheld as a draft, and plaintiffs do not challenge this sort of withholding.

As the Court has upheld all of the other withholdings made by OIPR, that component is entitled to summary judgment.

## IV.    DOJ IS ENTITLED TO SUMMARY JUDGMENT AS TO THE WITHHOLDING OF DOCUMENTS REFERRED TO THE NSA.

In its September 5, 2006, Order, the Court upheld all of NSA's determinations to withhold documents referred to it for processing under FOIA by various components of DOJ that comprised (1) "information concerning operational details of the TSP" and (2) "NSA TSP-related policies, procedures, checklists, and audits."  Mem. Op. at 23.  The Court denied summary judgment as to the determinations to withhold "the legal memoranda, opinions, and reviews pertaining to the TSP discussed in paragraph 29 of the declaration filed by Joseph B., Deputy Chief of Staff for Operations and Support for the Signals Intelligence Directorate of the NSA," id., and sought further submissions from the NSA concerning these documents.

As described in the Declaration of Lynn H. ("Second NSA Decl."), Deputy Chief of Staff for Operations and Support, Signals Intelligence Directorate, NSA, attached hereto as Ex. C , the vast majority of documents withheld by NSA fell within the categories of documents as to which the Court has already approved withholding.  Second NSA Decl. ¶ 4.  NSA withheld nine documents among those referred to it for review by DOJ because they fell within the category of "legal memoranda, opinions, and reviews."  Id. ¶ 5.  Of these nine documents, seven – OLC 41, 43, 71, 77, 79, 94, and 123 – were referred by OLC and, because they contained substantial equities of OLC, were also addressed in the original declaration filed by Mr. Bradbury, submitted as Exhibit A to defendant's opening Motion.  See Bradbury Decl. ¶ 27 (describing that declaration addressed documents processed by OLC and also documents in which OLC had

independent equities; ¶¶ 66-71 (identifying these documents and the reasons for their withholding). Specifically, OLC 41 is a draft legal opinion of OLC on which NSA provided comments, and OLC 43, 71, 77, 79, 94, and 123 are informal communications between NSA attorneys or personnel and DOJ attorneys discussing specific questions about the TSP. Second NSA Decl. ¶ 5. This Court has already determined that these specific documents are properly withheld, finding that drafts and "email and fax correspondence to and from OLC" are either "unconstested or exempt, " and that OLC has "sufficiently identified the predecisional and deliberative aspects of these records." Mem. Op. at 16.

Of the two remaining documents, ODAG 13 is a copy of a document prepared by the NSA's Office of General Counsel compiling certain information relating to the operation of the TSP and its policies and procedures, into which there are interspersed questions regarding the operational and procedural information contained in the document from other Executive Branch attorneys and corresponding responses from NSA. Second NSA Decl. ¶ 8. Thus, this document contains operational and procedural information of the type the Court has already determined to be properly withheld by NSA, see Mem. Op. at 21, and, in addition, constitutes a protected-attorney client communication in the form of questions and answers that is properly protected by Exemption Five. Id. ODAG 21 is a duplicate of OLC 123, which has already been determined to be properly withheld, see Second NSA Decl. ¶ 9. Thus, NSA's determinations to withhold these documents should be upheld.

Finally, in the course of preparing the supplemental submissions required by the Court in support of this renewed motion, OLC determined that one additional document within its collection was properly referred to NSA. See Second Bradbury Decl. ¶ 111. NSA has reviewed that document and has determined that it concerns TSP-related policies and procedures which are

properly withheld for the reasons previously provided in the Declaration of Joseph B.  Second

NSA Decl. ¶ 10.  This Court has concurred that such information is properly withheld.

<u>See</u> Mem. Op. at 2.  Thus, OLC 7 is properly withheld under FOIA pursuant to Exemptions One

and Three.

<b>CONCLUSION</b>

For the reasons stated herein and in the supporting declarations, as in well as in the

Department's previously filed brief and declarations, DOJ has acted properly in responding to the

FOIA requests submitted by each of the plaintiffs in this case.  As a result, the Department is

entitled to summary judgment pursuant to Federal Rule of Civil Procedure 56.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General, Civil Division

JEFFREY A. TAYLOR
United States Attorney

JOSEPH H. HUNT
Director, Federal Programs Branch

JOHN R. TYLER
Senior Trial Counsel
Federal Programs Branch

_____/s/ Rupa Bhattacharyya_____
RUPA BHATTACHARYYA (VA# 38877)
Senior Trial Counsel
Federal Programs Branch, Civil Division
United States Department of Justice
P.O. Box 883, 20 Massachusetts Ave., N.W.
Washington, D.C.  20044
Tel: (202) 514-3146
Fax: (202) 318-7593
Email: rupa.bhattacharyya@usdoj.gov

Dated: October 18, 2007.