## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ELECTRONIC PRIVACY INFORMATION CENTER,**<br><br>**Plaintiff,**<br>**v.**<br><br>**DEPARTMENT OF JUSTICE,**<br><br>**Defendant.** | **Civil Action 06-00096 (HHK)** |
| **AMERICAN CIVIL LIBERTIES UNION, et al.,**<br><br>**Plaintiffs,**<br>**v.**<br><br>**DEPARTMENT OF JUSTICE,**<br><br>**Defendant.** | **Civil Action 06-00214 (HHK)** |

## MEMORANDUM OPINION AND ORDER

In these consolidated actions, plaintiffs Electronic Privacy Information Center, American Civil Liberties Union, American Civil Liberties Union Foundation, and the National Security Archive Fund, Inc. (collectively "EPIC") bring claims against the Department of Justice ("DOJ") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking the release of agency records regarding the former policy of the Bush Administration to conduct, under certain circumstances, surveillance of domestic communications without the prior authorization of the Foreign Intelligence Surveillance Court ("FISA Court").[1]  DOJ previously moved for summary

---

[1] "FISA" refers to the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1801 *et seq.*  In its submissions, DOJ has identified the surveillance activities at issue to be the so-called "Terrorism Surveillance Program," or "TSP."  First Bradbury Decl. ¶¶ 18–20.

judgment and this court issued a Memorandum Opinion and Order on September 5, 2007, *EPIC v. Dep't of Justice*, 511 F. Supp. 2d 56 (D.D.C. 2007) ("*EPIC 1*"), that granted in part and denied in part DOJ's motion.

Before the court are DOJ's renewed motion for summary judgment [# 50][2] and EPIC's renewed motion for *in camera* review of withheld records [# 57]. Upon consideration of the motions, the oppositions thereto, and the record of this case, the court concludes that DOJ's renewed motion for summary judgment must be granted in part and denied in part, and that EPIC's renewed motion for *in camera* review must be granted in part and denied in part.

## I. BACKGROUND

DOJ has moved for summary judgment with respect to all documents that remain at issue in this litigation after *EPIC 1*. EPIC challenges the withholding of thirty of these remaining documents. Pls.' Opp'n 8 n.7; 31 n. 28.[3] EPIC does not challenge the withholding of any other documents. Accordingly, the court grants summary judgment to DOJ as to all documents other than the thirty documents specifically challenged by EPIC.

---

[2] This memorandum opinion also addresses the supplemental motion for summary judgment filed on behalf of the FBI by DOJ [# 54].

[3] These documents are: OLC 51, OLC 63/FBI 4, OLC 114, OLC 115/ODAG 3, OIPR 139, OIPR 140, FBI 7, OLC 16/ODAG 38, OLC 54/ODAG 1/OIPR 28, OLC 59/OIPR 29, OLC 62/ODAG 52, OLC 85, OLC 129/ODAG 6, OLC 131/ODAG 2/OIPR 37/FBI 51, OLC 132/ODAG 5, OLC 146, OLC 113/FBI 42, ODAG 42, FBI 301, FBI 302, FBI 303, FBI 8, FBI 173, FBI 175, FBI 176, FBI 178, FBI 194, FBI 193, FBI 195, and FBI 310.

EPIC does not challenge the withholding of any other documents but, nevertheless, asserts that this court should order *in camera* review of all documents that remain at issue after this court's *EPIC 1* opinion. This is the only time EPIC mentions the other documents, however.

## II. ANALYSIS

DOJ contends that the documents at issue are properly withheld pursuant to Exemptions 1, 3, and/or 5 of FOIA,[4] and that most of the withheld documents contain classified information.[5] EPIC asserts that DOJ's justifications for withholding are either improper or insufficiently justified and seeks an order for *in camera* review of the documents so that the court is able to verify whether DOJ has appropriately withheld the information in question.   EPIC also contends that DOJ has failed to adequately explain why information not exempt from disclosure cannot be segregated from exempt information and produced.[6]   Eighteen of the thirty documents have been withheld by OLC.[7]   The remaining twelve documents have been withheld by the FBI.   The court discusses these two categories of documents in turn.

---

[4] *EPIC 1* provides an explanation of FOIA and Exemptions 1, 3, and 5.   *EPIC 1*, 511 F. Supp. 2d at 56, 64-68.

[5] DOJ also asserts that this court should grant it summary judgment with respect to some documents because the Southern District of New York found that these documents were properly withheld in another FOIA action.   While the rationale for the decision of the Southern District of New York may be persuasive, this court has an independent obligation to adjudicate the merits of this litigation.

[6] DOJ's justifications for withholding the thirty documents at issue are set forth in two declarations:  one submitted by Steven Bradbury, the Principal Deputy Assistant Attorney General for the Office of Legal Counsel ("OLC") and one submitted by David M. Hardy, the Section Chief of the Record/Information Dissemination Section, Records Management Division of the FBI.   Bradbury's declaration addresses documents withheld by OLC and Hardy's declaration addresses documents withheld by the FBI.

[7] Some of these documents originated in other components of the Department of Justice, such as the Office of Intelligence Policy and Review ("OIPR").   OLC has either been asked to respond on behalf of these components or has "independent equities" in these documents.   First Bradbury Decl. ¶ 27.   Accordingly, the court collectively refers to all documents described in Bradbury's declarations as documents withheld by OLC.

A.      **OLC Documents**

The eighteen documents withheld by OLC fall into one of two categories:  (1) documents related to the President's reauthorization of the TSP and (2) documents related to OLC's legal opinions.  EPIC challenges the application of Exemptions 1, 3, and 5 to these documents.  Below, the court addresses these categories separately with respect to the issue of whether Exemptions 1 and 3 apply to the documents.  The court addresses these categories together with respect to the issue of whether Exemption 5 applies.

### 1. Exemptions 1 and 3 as Applied to Documents that Involve the President's Reauthorization of the TSP

Seven of the documents withheld by OLC pursuant to Exemptions 1 and 3 relate to the President's reauthorization of the TSP.[8]  Because the government has publicly acknowledged the existence of the TSP and the program is no longer authorized or in use, EPIC asserts that this court should scrutinize especially closely DOJ's contention that releasing these documents would harm national security.  EPIC also contends that DOJ has failed to justify its assertion that these documents must be withheld pursuant to Exemptions 1 and 3.  EPIC asserts further that, to the extent DOJ has provided any justification for withholding these documents, these justifications are almost entirely redacted from DOJ's public submissions and, as a result, it cannot respond in a meaningful way to DOJ's arguments in support of its position that these documents are exempt from disclosure.  EPIC lastly asserts that DOJ's segregability analysis is deficient.

---

[8] Six of these seven documents relate to OLC's involvement in the reauthorization process.  These six documents are:  OLC 51, OLC 63/FBI 4, OLC 114, OLC 115/ODAG 3, OIPR 139, and OIPR 140.  A seventh document – FBI 7 – contains advice from the Attorney General to the Director of the FBI regarding the legality of certain intelligence collection activities.

DOJ rejoins that this court should defer to its determination that releasing these documents would harm national security.  Even though some information about the TSP may have become public, DOJ asserts that release of further information would harm the United States' intelligence gathering process.  DOJ argues that it has extensively justified, in the numerous declarations filed with this court, its determination that these seven documents cannot be disclosed without compromising the United States' foreign intelligence collection activities.

With respect to EPIC's complaint that it is unable to meaningfully challenge DOJ's justifications for withholding disclosure of the documents because portions of the declarations setting forth the justifications have been classified and are available solely for this court's *in camera* review, DOJ points out that the D.C. Circuit has long recognized that such measures are appropriate in cases in which national security is implicated.  Lastly, DOJ asserts that the second Bradbury declaration adequately analyzes the segregability of the documents and has shown that there is no non-exempt information that is segregable from exempt information.

This court is not persuaded by EPIC's argument that because information about TSP has become publicly available there is reason to be skeptical of DOJ's assertion that releasing the withheld documents would harm national security.  To the contrary, just because some information about the TSP has become public, it does not follow that releasing the documents poses any less of a threat to national security.  As stated in Bradbury's first declaration, "Although the existence of the TSP is now publicly acknowledged, and some facts about the Program have been disclosed, the President has made clear that sensitive information about the nature, scope, operation, and effectiveness of the Program remains classified and cannot be disclosed without causing exceptionally grave harm to U.S. national security."  First Bradbury Decl. ¶ 20.

Furthermore, it is "well-established that the judiciary owes some measure of deference to the executive in cases implicating national security, a uniquely executive purview." *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 926-27 (D.C. Cir. 2003). Thus, the court will not second-guess a determination that disclosure of documents would harm national security so long as the agency's declarations provide sufficient detail that the material "withheld is logically within the domain of the exemption claimed," *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1998) (*quoting King v. U.S. Dep't of Justice*, 830 F.2d 210, 217 (D.C. Cir. 1987)), and "are neither controverted by contrary record evidence nor impugned by bad faith on the part of the agency." *King*, 830 F.2d at 217; *see also People for the Am. Way Found. v. NSA*, 462 F. Supp. 2d 21, 33-34 (D.D.C. 2006).

In *EPIC 1*, this court found that DOJ's public submissions, in conjunction with its classified submissions, make clear that these documents are properly classified and exempt from production under FOIA.[9]   *EPIC 1*, 511 F. Supp. 2d at 69 (noting that these "records . . . undoubtedly contain classified information"). And there is neither contradictory record evidence nor evidence of bad faith on the part of OLC in withholding documents out of concern for national security. Accordingly, the court defers to DOJ's determination that release of classified information in these seven documents would threaten national security.

EPIC asserts that the publicly available (*i.e.* redacted) versions of the Bradbury declarations lack detailed justifications as to why these seven documents are subject to Exemptions 1 and 3. EPIC is correct that DOJ's public submissions, in and of themselves, do

---

[9] Here, as elsewhere in this memorandum, sensitivity to maintaining the secrecy of classified matters and information requires the court to limit the breadth and depth of its discussion.

not contain adequate justifications as to why these seven documents are appropriately withheld

pursuant to these exemptions.  DOJ, however, has submitted far more detailed justifications in

the classified portions of its submissions, which this court has reviewed *in camera*.  The D.C.

Circuit has long recognized that *in camera* review of declarations and documents is proper in

cases implicating national security:

> We recognize that a fuller public record could enhance the adversary process; but
> it could also reveal sensitive information.  This would violate Exemption 1, for its
> basic purpose is to ensure that the FOIA will not require disclosure of any such
> sensitive material unless judicial scrutiny finds it warranted.  The proper
> procedure for a district court, then, is to accept sensitive affidavits *in camera*.

*Hayden v. NSA*, 608 F.2d 1381, 1385 (D.C. Cir. 1979).  EPIC is understandably frustrated at its

inability to review DOJ's submissions in their entirety due to their classified status.  However,

this court is well aware of, and does not take lightly, its obligation to ensure that DOJ has

sufficiently justified withholding these seven documents pursuant to Exemptions 1 and 3.

Having  reviewed the Bradbury declarations, including the redacted portions of the declarations,

the court concludes that the seven documents are properly withheld from disclosure pursuant to

Exemptions 1 and 3.

EPIC lastly argues that DOJ's segregability analysis, with respect to these seven

documents, is insufficient.  In *EPIC 1*, this court recited the familiar requirement that non-

exempt factual information contained in an otherwise protected record must be disclosed unless

it is "inextricably intertwined" or otherwise cannot be segregated from any deliberative material

in the document.  *EPIC 1*, 511 F. Supp. 2d at 64.  This court concluded that it was unable to

ascertain whether it was appropriate to authorize the withholding of certain documents in their

entirety because DOJ's segregability determination was "too vague and general to be useful."  *Id.*

at 69.

The second Bradbury declaration provides additional descriptive information with respect to the seven withheld documents.  For example, the first Bradbury declaration does not specifically describe OLC 51.  In contrast, the second Bradbury declaration describes OLC 51 as a "one-page memorandum, dated August 9, 2004, from the Acting Assistant Attorney General for OLC to the Deputy Attorney General entitled 'Proposed Memorandum,' which contains OLC's advice concerning a decision to be made by the Deputy Attorney General regarding an intelligence collection activity."  Second Bradbury Decl. ¶ 26.  Similarly, the court required more information to be provided specifically with respect to FBI 7.  The court found that the first Bradbury declaration fails to "substantiate the determination to withhold the document in full.  Specifically, DOJ's explanation fails to justify the department's determination that the information therein cannot be segregated from nonexempt information."  The second Bradbury declaration at  ¶ 51 provides a fuller description of FBI 7.  It states that "FBI 7 is a one-page memorandum, dated October 20, 2001, from the Attorney General to the FBI, advising the Director that certain intelligence collection activities are legal and have been appropriately authorized.  The memorandum is classified TOP SECRET and is withheld under FOIA Exemptions One and Three."  Second Bradbury Decl. ¶ 51.

While the further descriptions available for public viewing with respect to OLC 51 and FBI 7 in the second Bradbury declaration do not show why any non-classified information in these memoranda cannot be segregated from the classified information and produced, the descriptions and explanations contained in the redacted paragraphs of the second Bradbury declaration demonstrate that there is no segregable information in these document that should be disclosed.  Consequently, the court sustains DOJ's position as to segregability with respect to OLC 51 and FBI 7.  Moreover, the same analysis and determination is made with respect to OLC

8

63/FB1 4, OLC 114, OIPR 139, OLC 115/ODAG 3, and OIPR 140.  Consequently, DOJ's

motion for summary judgment is granted with respect to these records.

### 2.   *Exemptions 1 and 3 as Applied to Documents that Contain Legal Opinions of OLC*

Pursuant to Exemptions 1 and 3, OLC has withheld ten documents that contain legal

opinions of OLC.[10]  In its prior memorandum opinion, this court found that it "lacks the

information necessary to conduct even the most deferential review of the documents in question

and their connection to classified information." *EPIC 1*, 511 F. Supp. 2d at 71 n.10.  For

example, the court noted that DOJ had failed to "sufficiently identify the universe of documents

within this category, apart from noting that they are 'final memoranda' related to TSP." *Id.* at 70.

The second Bradbury declaration addresses this court's heretofore inability to identify the

universe of documents at issue by describing each of the eleven documents in this category with

sufficient detail.[11]  Second Bradbury Decl. ¶¶ 83, 90, 98.

EPIC now challenges OLC's determination that these documents may be withheld

pursuant to Exemptions 1 and 3.  EPIC's arguments mirror those raised with respect to

documents related to the President's reauthorization of the TSP.  That is, EPIC contends that:  (1)

this court must closely scrutinize DOJ's assertion that releasing these documents would harm

national security; (2) DOJ has not adequately justified withholding these documents; and (3) DOJ

has not performed an adequate segregability analysis.

---

[10]  These ten documents are: OLC 16/ODAG 38, OLC 54/ODAG 1/OIPR 28, OLC 59/OIPR 29, OLC 62/ODAG 52, OLC 85, OLC 129/ODAG 6, OLC 131/ODAG 2/OIPR 37/FBI 51, OLC 132/ODAG 5, OLC 113/FBI 42, and ODAG 42.  OLC 146 is the only document at issue here that contains OLC's legal opinions but is not withheld pursuant to Exemption 1 or 3.

[11]  Merely because the court can identify the universe of documents does not mean DOJ has provided enough information about the documents to allow the court to ensure that they are appropriately withheld pursuant to various exemptions.

For the reasons discussed *supra*, EPIC's first argument is without merit.  That is, absent

contrary evidence or bad faith – neither of which exists in this case – this court will not second-

guess DOJ's determination that release of the classified information in these documents would

harm national security.

EPIC's second argument also cannot be sustained.  While there is some force to EPIC's

argument that the publicly available (*i.e.* redacted) versions of the Bradbury declarations do not

contain enough information to justify the Exemption 1 and 3 withholdings, the classified portions

of the second Bradbury declaration, specifically ¶ 84,  provide such information.

EPIC's argument with respect to the issue of segregablity has merit, however.  DOJ's

segregability analysis, found in ¶ 88 of the second Bradbury declaration, is deficient.  The

declaration states, "I have specifically reviewed each of the documents identified in paragraph 83

and have determined that all portions of these documents contain either classified information or

deliberative and privileged legal advice and analysis of OLC.".[12]  "[A] blanket declaration that all

facts are so intertwined to prevent disclosure under the FOIA does not constitute a sufficient

explanation of non-segregability."  *Wilderness Soc. v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1,

19 (D.D.C. 2004); *see also Mead Data Cent. Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261

(D.C. Cir. 1977) (noting that an agency cannot provide conclusory statements regarding

segregability).  Moreover, the court is unable to make a segregability determination from its

review of the descriptions of these documents contained in the classified portions of the second

Brabury declaration.  Consequently, these documents shall be presented for this court's *in

camera* review.

---

[12]  This statement in ¶ 88 of the second Bradbury declaration does not apply to two of the
eleven documents:  OLC 113/FBI 42 and ODAG 42.  Therefore, DOJ has provided *no*
segregability analysis with respect to these documents.

### 3. *Exemption 5*

DOJ asserts that all of the documents withheld by OLC, except for FBI 7 and OLC 113/FBI 42, are properly withheld pursuant to Exemption 5. DOJ contends that these documents are subject to: (1) the deliberative process privilege; (2) the attorney-client privilege; and (3) the presidential communications privilege.[13] EPIC, predictably, asserts that Exemption 5 does not apply to the documents at issue. Below, the court addresses each of these privileges in turn.

#### i. *Deliberative Process Privilege*

DOJ contends that all of the documents withheld by OLC pursuant to Exemption 5 are subject to the deliberative process privilege[14] because they were created as part of an ongoing decision-making process. DOJ asserts that they contain advice and recommendations to others, such as the Attorney General (or his designee), the head of another Executive Branch agency, or the President, regarding intelligence gathering activities. Second Bradbury Decl. ¶¶ 13-24, 39.

EPIC rejoins that these documents are not subject to the deliberative process privilege. First, EPIC asserts that these documents contain OLC's conclusive interpretations of law.[15] EPIC contends that an agency's conclusive interpretations of law can never be withheld pursuant to the deliberative process privilege because FOIA mandates the disclosure of an agency's "final

---

[13] DOJ does not contend that all of these privileges apply to all of these documents. The court clarifies, in the text *infra*, which exemptions are claimed in connection with the documents.

[14] It is unclear whether the deliberative process privilege is asserted with respect to ODAG 42.

[15] EPIC's assertion that all of these documents originate with OLC does not appear to be correct. For example, DOJ asserts that OLC 63/FBI 4 is properly withheld pursuant to the deliberative process privilege, and the second Bradbury declaration describes this document as a memorandum "from the Acting Attorney General to the Counsel to the President." Second Bradbury Decl. ¶ 29.

opinions."  Second, EPIC argues that DOJ has failed to specifically identify the deliberative

processes at issue in these documents, as well as the role of these documents in these processes.

Third, EPIC asserts that it is likely that DOJ or the President relied on these documents in

adopting their official positions and policies, and the deliberative process privilege does not

apply to legal opinions that are incorporated into official positions and policies.  Only EPIC's

second argument is well-taken.

As EPIC notes, the deliberative process privilege does not extend to an agency's "final

opinions."  5 U.S.C. § 552(a)(2)(A) (requiring agencies to make available for public inspection

"final opinions"); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153-54 (1975) (recognizing that

FOIA does not extend to "final opinions").  For purposes of FOIA, a "final opinion" refers to

"final statements of agency policy," *Tax Analysts v. IRS*, 294 F.3d 71, 80 (D.C. Cir. 2002), as

well as statements that "explain agency action already taken or an agency decision already made"

and that "constitute final dispositions of matters by an agency."  *Sears*, 421 U.S. at 153-54

(internal quotations omitted).  EPIC asserts that an agency's conclusive interpretations of law are

"final opinions" for purposes of FOIA and cannot be withheld pursuant to the deliberative

process privilege.  EPIC contends that the documents at issue contain OLC's conclusive

interpretations of law and thus cannot be withheld pursuant to the deliberative process privilege.

EPIC's position proves too much.  The D.C. Circuit has long recognized that legal advice

is an integral part of the decision-making process and is protected by the deliberative process

privilege.  *Brinton v. Dep't of State*, 636 F.2d 600, 604 (D.C. Cir. 1980) ("[t]here can be no

doubt that . . . legal advice, given in the form of an intra-agency memoranda[16] prior to an agency

decision on the issues involved, fits exactly within the deliberative process rationale . . . .");

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980) (stating that a

"series of memoranda to the Assistant Secretary of the Army from the General Counsel . . .

recommending legal strategy" is a "classic case of the deliberative process at work") (internal

quotations omitted).  OLC's governing regulations provide that OLC serves numerous functions,

which include rendering opinions to the Attorney General and assisting the Attorney General in

the performance of his functions as legal adviser to the President.  28 C.F.R. § 0.25.  Thus, OLC

is empowered to provide legal advice to the Attorney General and the President.  If OLC

provides legal advice as part of a decision-making process, this legal advice is protected under

the deliberative process privilege.

 EPIC contends that because OLC's interpretations of law are binding on the executive

branch, OLC's interpretations represent the official and final opinions of the executive branch.

Pls.' Opp'n 18 (*citing Tenaska Wash. Partners II v. United States*, 34 Fed. Cl. 434, 439 (Fed. Cl.

1995).[17]  Similarly, EPIC asserts that it is irrelevant whether others in the executive branch may

later make a different decision after considering OLC's advice because OLC speaks for DOJ and

thus OLC's legal opinions represent the "final opinions" of DOJ.

---

[16] This rationale applies with equal force to inter-agency memoranda.  5 U.S.C. §
552(b)(5) (exempting from disclosure "*inter-agency* or intra-agency memorandums . . . which
would not be available by law to a party other than an agency in litigation with the agency")
(emphasis added).

[17] EPIC asserts that OLC's legal opinions are authoritative and binding throughout the
executive branch and supports this proposition by reference to law review articles and
congressional testimony.  The court will assume for the sake of argument, without deciding, that
this is so.

EPIC's argument is utterly without merit.  It is nonsensical to state that legal opinions can never be protected by the deliberative process privilege because of their authoritative nature.  If legal opinions are disclosable simply because they are authoritative or conclusive, this "would mean that virtually all legal advice OLC provides to the executive branch would be subject to disclosure."  *CREW v. Office of Admin.*, 249 F.R.D. 1, 6 (D.D.C. 2008) (internal quotations omitted).  This would significantly chill the ability of the executive branch to obtain legal advice.[18]  Rather, authoritative legal opinions that are promulgated as part of a larger decision-making process may well be protected by the deliberative process privilege.

EPIC's position that all conclusive legal opinions must be disclosed is based on a misreading of two D.C. Circuit cases – *Tax Analysts*, 294 F.3d 71 (*Tax Analysts II)* and *Tax Analysts v. IRS*, 117 F.3d 607 (D.C. Cir. 1997) (*Tax Analysts I*).  Contrary to EPIC's assertion, neither case stands for the unilateral proposition that an agency's conclusive interpretations of law are always "final opinions" for purposes of FOIA.  These cases instead stand for the more limited proposition that there are some instances in which agency counsel's legal opinions are not protected by the deliberative process privilege because they are not issued as part of a decision-making process.  *Tax Analysts II*, 117 F.3d at 617; *Tax Analysts I*, 294 F.3d at 81.

For example, in *Tax Analysts I,* the court found that legal memoranda issued by IRS's agency counsel were not protected by the privilege because they were issued to field personnel to "develop a body of coherent, consistent interpretations of the federal tax laws nationwide."  117

---

[18]   Furthermore, there are several cases that have stated that OLC memoranda may properly be withheld from disclosure under the deliberative process privilege.  *CREW*, 249 F.R.D. at 6 (*citing Southam News v. U.S. INS*, 674 F. Supp. 881, 887 (D.D.C. 2008); *Morrison v. U.S. Dep't of Justice,* 1988 WL 47662 (D.D.C. Apr. 29, 1988)).

F.3d at 617.  And in *Tax Analysts II*, the court found that legal memoranda issued by IRS's agency counsel were not protected by the privilege because they were issued "horizontally" among agency components.  294 F.3d at 81.  The court noted that legal memoranda that were transmitted upwards, such as to the Commissioner of the IRS, were quite possibly part of a decision-making process and thus subject to the deliberative process privilege.  *Id.*

*Tax Analysts I* and *Tax Analysts II* reflect the D.C. Circuit's recognition that whether a document is subject to the deliberative process privilege is "dependent upon the individual document and the role it plays in the administrative process."  *Coastal States Gas Corp.,* 617 F.2d at 867; *see also Sears*, 421 U.S. at 138 ("[C]rucial to the decision of this case is an understanding of the function of the documents in issue in the context of the administrative process which generated them.").  As part of this analysis, the court looks to the decision-making authority vested in the office or person issuing the disputed document; the function and significance of the document in the agency decision-making process; and whether the document "flow[s] from superiors to subordinates, or vice versa."  *Taxation with Representation Fund v. IRS*, 646 F.2d 666, 681 (D.C. Cir. 1981).  In *Coastal States Gas Corp.*, the D.C. Circuit further elaborated that documents that contain "advice to a superior," "suggestions or recommendations as to what agency policy should be," "discuss the wisdom or merits of a particular agency policy," or "recommend new agency policy," would fall under the deliberative process privilege, but that "simply straightforward explanations of agency regulations in specific factual situations" would not be covered by the deliberative process privilege.  617 F.2d at 868-69.

The descriptions of the documents withheld by OLC imply that it is likely that most if not all were properly withheld pursuant to the deliberative process privilege.  For example, OLC

15

63/FBI 4 contains "recommendations and legal advice" that were transmitted from DOJ to the President and his advisors.  Second Bradbury Decl. ¶ 37.  Because the President is superior in the executive branch's hierarchy to OLC, this communication was from a subordinate to a superior official.  And recommendations and advice with respect to a final decision that must be made by the President would clearly fall within the deliberative process privilege.[19]  The court cannot conclude that the deliberative process applies to these documents, however.  Neither of the Bradbury declarations provide sufficient information as to the subject or content of these recommendations or legal advice.  Neither does the Bradbury declaration describe the decisions to which these recommendations relate.

It is well established that, to claim the deliberative process privilege, an agency must identify "the role of a contested document in a specific deliberative process . . . in order to show by specific and detailed proof that disclosure would defeat, rather than further, the purposes of the FOIA."  *Judicial Watch, Inc. v. U.S. Postal Serv.,* 297 F. Supp. 2d 252, 259 (D.D.C. 2004)

---

[19]  Accordingly, EPIC is incorrect in asserting that "the fact that the President or another executive branch official may later make a policy decision after considering the OLC's legal conclusion is irrelevant because OLC speaks for the Justice Department."  Pls.' Opp'n 20 (internal quotations omitted).  This argument ignores the D.C. Circuit's mandate that the deliberative process privilege requires a fact-specific analysis.  *Coastal States Gas Corp.,* 617 F.2d at 867.  Even if OLC "speaks for [DOJ]," Pls.' Opp'n 20, DOJ may have provided this legal conclusion as part of a larger decision-making process that is subject to the deliberative process privilege.  As noted in the text *supra,* a legal conclusion that is part of a larger decision-making process may well be subject to the deliberative process privilege.

The fact that the "ultimate" decision may have been made by someone outside of the Justice Department is not determinative.  "Congress plainly intended to permit one agency possessing decisional authority to obtain written recommendations and advice from a separate agency not possessing such decisional authority without requiring that the advice be any more disclosable than similar advice received from within the agency."  *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 188 (1975).  Furthermore, as noted *supra,*  the deliberative process privilege applies to inter-agency memoranda.

(internal quotations omitted).  The agency must also demonstrate that the documents at issue are pre-decisional.  *Id.*  As EPIC correctly argues, DOJ has failed to do so.  Both the first and second Bradbury declarations contain extraordinarily vague descriptions of the deliberative processes at issue.

For example, the second Bradbury declaration states that OIPR 139 contains "legal advice concerning certain decisions relating to classified foreign intelligence activities" that was relayed to the Deputy Attorney General from the Assistant Attorney General for OLC.  Second Bradbury Decl. ¶ 32.  This declaration also states that OLC 54/ODAG 1/OIPR 28 contains  a "legal review of classified foreign intelligence activity" that was sent from the Assistant Attorney General to the Attorney General, *id.* at ¶ 83(b), and that yet another one – OLC 59/OIPR 29 – involves a "a request for OLC views regarding the applicability of certain statutory requirements."  *Id.* at ¶ 83(c).  The second Bradbury declaration fails to describe the "classified foreign intelligence activity," or the "statutory requirements" at issue in these documents.  The declaration also fails to describe with sufficient detail the decision-making process for which these documents were created.

EPIC lastly contends that the deliberative process privilege does not apply to any of these documents because they most likely contain legal opinions that were adopted by the Attorney General or incorporated into DOJ's final policies.  As EPIC notes, if OLC's legal opinions are "adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public," then OLC legal opinions are no longer considered deliberative or predecisional.  *CREW,* 249 F.R.D. at 7 (*quoting Coastal States*, 617 F.2d at 866).  EPIC provides no evidence to support this assertion other than speculation, however.  Such speculation will not

17

suffice.  *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 359 (2d Cir. 2005) (stating that "mere speculation will not suffice" and that a court may not infer that an agency is relying on reasoning contained in a subordinate's report).  There "must be evidence that an agency has *actually* adopted or incorporated by reference the document at issue."  *Id.*; *see also Security Fin. Life Ins. Co. v. Dep't of Treasury*, 2005 WL 839543, at *7 (D.D.C. Apr. 12, 2005) (finding that the government does not carry the burden of proving that documents were not adopted formally or informally).  *Cf. Common Cause v. IRS*, 646 F.2d 656, 660 (D.C. Cir. 1981) (finding that casual allusion to reasons stated in a pre-decisional document does not constitute the necessary "express" adoption); *Brinton*, 636 F.2d at 605 (declining to find that advisory material was incorporated into final agency policy because there was "no indication that any material was expressly adopted or incorporated by reference.").

EPIC does note that then-acting Attorney General James Comey testified to Congress that the Department of Justice was unable to certify the TSP program and that "it was largely OLC, the Office of Legal Counsel's work, that I was relying upon . . . in making my decision" not to certify the TSP program.  Def.'s Opp'n to Pls.' M. for Leave to File Supp. Mem., Ex. B at 24. Comey's testimony does not reference any specific OLC memoranda, however.  Comey only generally references OLC's advice.  Such a general reference does not constitute a waiver of the deliberative process privilege with respect to any OLC memorandum.  The deliberative process privilege is waived only if there is an "express" adoption of OLC memoranda.  *Sears*, 421 U.S. at 152 (stating that when an agency "chooses expressly to adopt or incorporate an intra-agency [or inter-agency] memorandum previously covered by Exemption 5 in what would otherwise be a final opinion" then the deliberative process privilege does not apply).

## ii. Attorney-Client Privilege

OLC next contends that, with the exception of FBI 7 and OLC 113, all documents withheld by OLC are subject to the attorney-client privilege.[20]  The attorney-client privilege can apply to documents withheld by government agencies – "[i]n the governmental context, the 'client' may be the agency and the attorney may be an agency lawyer." *Tax Analysts I,* 117 F.3d at 618; *see also Brinton,* 636 F.2d at 603-04.  "The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services." *Tax Analysts I*, 117 F.3d at 618.  The "privilege also protects communications from attorneys to their clients if the communications 'rest on confidential information obtained from the client.'" *Id.* (*quoting In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984)); *see also Schlefer v. United States*, 702 F.2d 233, 245, 226 (D.C. Cir. 1983) (the privilege "operates when (1) the communication from attorney to client is confidential, *and* (2) the communication is based on confidential information provided by the client.").  And, "[c]orrelatively, when an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged." *In re Sealed Case*, 737 F.2d at 99 (internal quotations omitted).[21]  "To allow the contrary rule

---

[20]  This court previously stated that, with respect to records related to OLC legal opinions, "while it appears likely that many of these documents are protected under exemption 5 (because they are privileged as deliberative or as attorney-client communications), the court is powerless to reach that conclusion . . . the court has no way to assess [this] claim apart from its naked assertion [in the Bradbury declaration]." *EPIC 1*, 511 F. Supp. 2d at 70.  For the reasons discussed in the text *infra*, the second Bradbury declaration still fails to provide the necessary information.

[21]  The D.C. Circuit has noted that "advice prompted by the client's disclosures may be further and inseparably informed by other knowledge and encounters.  We have therefore stated that the privilege cloaks a communication from attorney to client based *in part at least*, upon a confidential communication [to the lawyer] from [the client]." *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984).

would permit agencies to insulate facts from FOIA disclosure by simply routing them through lawyers in the agency and invoking the attorney-client privilege." *Brinton*, 636 F.2d at 604. *See also In re Sealed Case*, 737 F.2d at 99; *Schlefer*, 702 F.2d at 245 (noting that the attorney-client privilege protects only confidential information provided by an agency client that is about the agency, or involves the agency).

When asserting privilege based on an attorney's communication to a client, the client has the burden of demonstrating "with reasonable certainty . . . that the lawyer's communication rested in significant and inseparable part on the client's confidential disclosure." *Id.* The privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Id.* (internal quotations omitted). The privilege does not "exempt a document from disclosure simply because the communication involves the government's counsel." *Judicial Watch, Inc. v. Dep't of Army*, 435 F. Supp. 2d 81, 89 (D.D.C. 2006).

EPIC contends that DOJ has failed to demonstrate that each of these document contains confidential information provided by a client in the course of seeking legal advice. DOJ rejoins that the Bradbury declarations demonstrate that all of the documents for which attorney-client privilege is claimed were prepared in response to requests for legal advice related to classified foreign intelligence collection activities. DOJ argues that because DOJ does not generally conduct such activities, the classified information was necessarily provided by an agency client in the course of seeking legal advice.[22] EPIC has the better argument.

---

[22] DOJ further argues that the advice prepared by OLC was prepared with the expectation that such advice would be held in confidence.

It is not the case that just because the documents at issue contain classified information the documents are protected by the attorney-client privilege.  The attorney-client privilege protects confidential information that involves or is about that client.  The Bradbury declarations do not indicate what agency or executive branch entity is the client for purposes of the attorney-client privilege.  The Bradbury declarations do not specify what entity transmitted the confidential information at issue to the attorneys.  This classified information may have been provided by an agency other than the agency or executive branch entity/official that is asserting the attorney-client privilege.  The Bradbury declarations indicate that the documents at issue contain legal advice.  Simply because the documents contain legal advice does not necessarily mean that the attorney-client privilege applies to the documents, however.  In short, the declarations provided by DOJ are too vague to enable this court to determine whether the attorney-client privilege applies.

The court has no doubt that, to the extent DOJ became privy to classified information, there was an expectation that DOJ was to keep this information confidential.  The attorney-client privilege is not necessarily the means for protecting this information.  Without more information, the court cannot conclude that the attorney-client privilege applies.

EPIC lastly argues that DOJ has failed to explain how the attorney-client relationship will be harmed in light of the fact that DOJ has released its legal opinions in the past.  This argument is without merit.  Assuming that DOJ had the authority to waive the attorney-client privilege and did waive it in the past, this does not mean that the privilege is necessarily waived with respect to the instant documents.

### iii.  *Presidential Communications Privilege*

DOJ asserts that the presidential communications privilege applies to OLC 63/FBI 4, OLC 146, and OIPR 140.  EPIC contends that DOJ cannot invoke this privilege because it must be personally invoked by the President.  EPIC also asserts that these records are not the kind that fall within this privilege because they are not advisory and deliberative, will not reveal the President's mental processes, and will not disclose the decision-making processes of the President.

DOJ rejoins that in the FOIA context, the presidential communications privilege does not need to be invoked by the President himself.  DOJ next asserts that these documents fall within the presidential communications privilege because the Bradbury declarations make clear that these documents were provided to the President or other high-level White House officials in response to requests for advice regarding foreign intelligence collection activities with respect to which the President was the ultimate decision-maker.  DOJ has the better argument.

DOJ is correct that the presidential communications privilege does not need to be asserted by the President himself.  There is no indication in the text of FOIA that the decision to withhold documents pursuant to Exemption 5 must be made by the President.  *Lardner v. U.S. Dep't of Justice*, 2005 WL 758267, at *8 (D.D.C. Mar. 31, 2005).  The presidential communications privilege does not apply to *every* presidential decision-making process, however.  The D.C. Circuit has only provided for a "limited" extension of the privilege "down the chain of command" to the President's "immediate White House advisors" and their staff.  *Judicial Watch v. U.S. Dep't of Justice*, 365 F.3d 1108, 1115-16 (D.C. Cir. 2004).  Thus, "[n]ot every person who plays a role in the development of presidential advice . . . can qualify for the privilege." *Id.*

(*citing In re Sealed Case*, 121 F.3d 729, 752 (D.C. Cir. 1997)).  Accordingly, the presidential

communications privilege applies to the three documents at issue only if they were solicited or

received by immediate or key advisors to the President.  *Id.* at 1116.  That is, these individuals

must be members of an immediate White House adviser's staff who have broad and significant

responsibility for investigating and formulating the advice to be given the President."  *In re*

*Sealed Case*, 121 F.3d at 752.  If so, the privilege will apply.

Furthermore, EPIC's argument that these documents are not covered by the presidential

communications privilege because they are not advisory and deliberative, and would not reveal

the mental processes of the President, is without merit.  EPIC cites no authority for the

proposition that the presidential communications privilege extends solely to advisory and

deliberative documents, or to documents that would reveal the mental processes of the President.

EPIC appears to confuse the presidential communications privilege with the deliberative process

privilege – they are two separate privileges.  *Id.* at 745 ("the two privileges are distinct and have

different scopes").  Indeed, the D.C. Circuit has noted that the presidential communications

privilege applies to documents that may not be covered by the deliberative process privilege – the

D.C. Circuit has found that the privilege applies to "final and post-decisional materials as well as

pre-deliberative ones."  *Id*.

Lastly, EPIC's assertion that the presidential communications privilege extends only to

documents that reveal the mental processes of the President is not well-taken.  The D.C. Circuit

has found that the privilege extends to communications that:  (1) "do not themselves directly

engage the President, provided the communications are either authored or received in response to

a solicitation by presidential advisers in the course of gathering information and preparing

23

recommendations" for the President or (2) are "authored or solicited and received by those members of an immediate White House advisor's staff who have broad and significant responsibility for investigating and formulating the advice to be given to the President on a particular matter." *Id*. at 757.  In light of the fact that the privilege extends to communications in which the President is not necessarily involved, it cannot be the case that the privilege extends solely to documents that reveal the President's mental processes.

The second Bradbury declaration demonstrates that these three documents were properly withheld pursuant to the presidential communications privilege.  All three documents were received either by the President or an immediate advisor to the President.  OLC 63/FBI 4 was sent from the Acting Attorney General to the Counsel to the President and copied to the President's Chief of Staff.  OLC 146 was sent from a Deputy Assistant Attorney General and Special Counsel in OLC to the Counsel to the President.  OIPR 140 was sent from the Assistant Attorney General for OLC to the White House Counsel.  All three documents involved matters related to the presidential decision-making process and/or matters on which the White House sought advice.  OLC 63/FBI 4 relates to the President's decision to reauthorize the TSP, OLC 146 was created in response to the White House's request for information regarding potential responses to terrorist activity, and OIPR 140 was provided by OLC in the course of the presidential decision-making process regarding the continued authorization of particular foreign intelligence activities.   Accordingly, this court grants summary judgment to DOJ with respect to OLC 63/FBI 4, OLC 146, and OIPR 140.

B.      **FBI Documents**

EPIC challenges the witholding of twelve documents that have been withheld by the

FBI.[23]  These documents contain information about how TSP-derived information has helped in

the FBI's terrorist investigations.  These documents fall into two categories:  (1) internal

memoranda from the Assistant Director of the Counterterrorism Division to the FBI Director and

(2) memoranda concerning the use of TSP in counterterrorism investigations.  The FBI asserts

that these documents are properly withheld pursuant to Exemptions 1, 3, and/or 5.

EPIC challenges the FBI's position that all twelve of these documents are properly

withheld in their entirety.  EPIC points out that the FBI's rationale for withholding these

documents pursuant to Exemptions 1 and 3 is redacted from the FBI's public submissions almost

in its entirety, and thus EPIC cannot discern or challenge the rationale for withholding these

documents in their entirety.

While the FBI's rationale for withholding these documents in their entirety is redacted

from the FBI's public submissions, the FBI has provided its rationale in the classified

submissions submitted to the court for *in camera* review.  As discussed *supra*, such *in camera*

review is appropriate when a FOIA request involves sensitive issues of national security.  Upon

review of the classified submissions, the court concludes that these documents, in their entirety,

are properly withheld under exemptions 1 and 3.[24]

---

[23]  These documents are:  FBI 301, FBI 302, FBI 303, FBI 8, FBI 173, FBI 175, FBI 176, FBI 178, FBI 193, FBI 194, FBI 195, and FBI 310.

[24] Having determined that the twelve documents withheld from disclosure by the FBI are exempt from disclosure in their entirety pursuant to Exemptions 1 and 3, the court will not address at length the rationale for the FBI's assertion that four of the documents – FBI 8, FBI 301, FBI 302, and FBI 303 – are also exempt from disclosure pursuant to Exemption 5.  It

C.      **Motion for *In Camera* Review**

EPIC requests that this court order DOJ to submit the thirty documents specifically challenged by EPIC, as well as all other documents with respect to which the court denied summary judgment in its prior memorandum opinion, for *in camera* review.  This court has broad discretion as to whether to order *in camera* review of documents.  *Carter v. Dep't of Comm.*, 830 F.2d 388, 392 (D.C. Cir. 1987).  The court may order *in camera* review if such review is necessary "to make a responsible *de novo* determination on the claims of exemption." *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 996 (D.C. Cir. 1998) (internal quotations omitted).

The court concludes that *in camera* review is necessary with respect to all documents that have not been subject to this court's summary judgment determination.  DOJ has now had two opportunities to provide this court with sufficiently detailed affidavits to describe why the documents at issue are subject to the claimed exemptions, and why many documents must be withheld in full.  For the reasons discussed *supra*, DOJ's declarations are still lacking with respect to some of the withheld documents.  The D.C. Circuit has noted that "summary judgment may not be appropriate without in camera review when agency affidavits in support of a claim of exemption are insufficiently detailed."  *Armstrong v. Executive Office of the President*, 97 F.3d

---

suffices to state that the these documents are properly withheld from disclosure pursuant to the deliberative process privilege.  The FBI does not show that FBI 8 is also properly withheld under Exemption 5 pursuant to the attorney client privilege.  The attorney client privilege protects communications from attorneys to their clients, but only if "the communications rest on confidential information obtained from the client."  *CREW*, 249 F.R.D. at 4.  The FBI states that this communication involves a briefing of the FBI Director of the FBI's role and responsibilities within the TSP.  Thus, the sole grounds for asserting the attorney-client privilege appears to be the fact that agency counsel was involved in the communication.  It is well-established that the attorney-client privilege does not extend to communications simply because they involve the government's counsel.  *Judicial Watch*, 435 F. Supp. 2d at 89.

575, 578 (D.C. Cir. 1996).  Thus, rather than order further briefing, this court will require DOJ to submit those documents for which it has not been granted summary judgment for *in camera* review.  When the number of documents at issue are few in number, *in camera* "review may save time and money." *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 393 (D.C. Cir. 1987); *Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996) ("Another crude, albeit important, factor to be considered is the number of the withheld documents.").

### III.  CONCLUSION

For the foregoing reasons, it is this 31st day of October 2008, hereby

**ORDERED** that the Department of Justice's motion for summary judgment (#50 and #54) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that EPIC's motion for *in camera* review (#57) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that the Department of Justice shall submit OLC 16/ODAG 38, OLC 54/ODAG 1/OIPR 28, OLC 59/OIPR 29, OLC 62/ODAG 52, OLC 85, OLC 129/ODAG 6, OLC 131/ODAG 2/OIPR 37/FBI 51, OLC 132/ODAG 5, OLC 113/FBI 42, and ODAG 42 for *in camera* review, along with any supplemental briefing regarding these records it wishes the court to consider, by no later than November 17, 2008.

Henry H. Kennedy, Jr.
United States District Judge
